For the reasons stated the motion will be denied.

BEARD J., and SCOTT, J., concur.

---

## STATE v. KEEFE.

RESERVED QUESTIONS—JURISDICTION—CRIMINAL LAW—RIGHT OF AN ACCUSED TO A SPEEDY TRIAL—APPLICATION TO CONVICT OF THE CONSTITUTIONAL AND STATUTORY PROVISIONS FOR A SPEEDY TRIAL—STATUTORY CONSTRUCTION.

1. Under the statute providing that constitutional questions only may be reserved for the decision of the supreme court upon the order of a district court, questions affecting the right of one accused of crime to be discharged for delay in prosecution are properly reserved when they involve the constitutional right of the accused to a speedy trial, and that right is claimed to have been violated.

2. The statute (R. S. 1899, Secs. 5382-5384) providing for the discharge of an accused if not brought to trial within a specified period supplements the constitutional provision for a speedy trial and prescribes a method for securing the right thereby declared.

3. Such statute is to be regarded as enacted for the purpose of rendering the constitutional guaranty effective, and as a legislative declaration óf what is and what is not, under the circumstances named, a reasonable and proper delay in bringing an accused to trial in respect of his constitutional right to a speedy trial.

4. A conviction and sentence for one felony is not a bar to an indictment or trial for another, and a convict while imprisoned in the penitentiary is not exempt from trial and sentence for another crime, whether charged to have been committed before or during such imprisonment.

5. Except for the purpose of testifying as a witness, a writ of habeas corpus or some writ or order of that nature authorized by law is necessary to compel a convict serving a sentence in the penitentiary to be brought before the court, and where his presence is sought to try him on another charge, the writ or order will be analogous to, or serve the same purpose as the common law writ of *habeas corpus ad prosequendum*.

6. A convict is not only amenable to the law, but is under its protection as well, and is not excepted from the constitutional guaranty of a speedy trial.

7. A defendant who had been committed to jail to await trial upon two informations charging separate crimes, was tried, convicted and sentenced to the penitentiary for a term of years upon one, and thereupon was removed to the penitentiary without a trial upon the other information. *Held,* that at the time of his trial upon the one information, he was under the protection of the guaranty of a speedy trial as to the other, and that said guaranty did not become lost to him upon his conviction and sentence and removal to the penitentiary.

8. The purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment of a criminal prosecution and the anxiety attending the same, and to avoid a long delay which might result in the loss of witnesses for both the accused and the state.

9. The statute providing for the discharge of an accused unless brought to trial within a specified period being intended to secure the right of speedy trial declared by the constitution, that should be taken into consideration in construing and applying the statute, and it should, therefore, be liberally construed in favor of the accused.

10. The section of the statute referring to an accused who has been committed to prison is not to be construed as applying to one so committed only during imprisonment while awaiting trial for the particular offense, but as applying also where a defendant has been committed to answer an indictment or information, and is retained in custody, though under a substituted commitment for his confinement upon conviction of another offense in the same or a different prison.

11. A defendant having been arrested and committed to jail to answer two informations charging separate crimes was tried, convicted and sentenced to four years imprisonment in the penitentiary upon one information, and immediately thereafter was removed to the penitentiary, without trial upon the remaining .information, though he might have been tried thereon at the same term and before his sentence. Upon being released from the penitentiary at the expiration of his sentence, and again arrested upon the second information, he moved for his discharge on the ground of delay in prosecution. *Held,* that the fact of his imprisonment in the penitentiary did not constitute a sufficient defense to the defendant's application for discharge; that Sections 5382 and 5384 of the Revised Statutes applied to him; and that he had not had a speedy trial as provided in the constitution.

[Decided November 19, 1908.]                    (98 Pac. 122.)

Reserved questions, from the District Court, Albany County, Hon. Charles E. Carpenter, Judge.

Frank J. Keefe, having been charged with the crime of murder in the first degree upon two informations, each charging the killing of a different person, though at the same time, was tried upon one, convicted of manslaughter, and sentenced to four years imprisonment in the penitentiary. After his release from such imprisonment he was again arrested upon the remaining information, and he moved to be discharged for delay in prosecution. The questions arising upon said motion were reserved by the order of the district court for the decision of the supreme court. The other facts are stated in the opinion.

*H. V. S. Groesbeck* and *W. R. Stoll,* for the defendant.

There is in reality but one question before the court, and that is whether Keefe's imprisonment in the penitentiary placed him beyond the guaranty of the Constitution as to a speedy trial, or beyond the right to insist upon the provisions of the statute. All other questions are incidental to this one. A defendant's right to a speedy trial is elementary and was secured at common law by the commission of jail delivery, which resulted in the jails being cleared, and the prisoners convicted or being punished or given their liberty twice in each year. The common law idea has always been enforced in this country and the defendant has been discharged even after a brief confinement unless extraordinary circumstances seemed to render it unjust to the State to discharge the prisoner without giving it a fair opportunity to prepare its case for trial. That seems to be the rule in states where there has been no statute limiting the time within which a defendant shall be brought to trial. (12 Cyc. 498; U. S. v. Fox, 3 Mont. 512; *Ex parte* Stanley, 4 Nev. 113; Sample v. State, 138 Ala. 259; Dudley v. State, 55 W. Va. 472.) The constitutional guaranty of a speedy trial applies to every accused, which means a prisoner against whom a formal accusation is lodged in the regular order of proceedings recognized in courts of justice. The statute is merely a legislative construction of the constitutional provision, and Section 5382 clearly applies to the defendant. He was a prisoner; had been committed for the offense of murder; had been committed to prison under the indictment; and was still imprisoned until at least February 12, 1907. The defendant was in the penitentiary under sentence of the court, and all the state had to do was to bring him from the penitentiary and thus present him in court for trial. The provisions of the statute are imperative and mandatory. (12 Cyc. 499-500; 1 Bish. Cr. Pr., Sec. 951; Robinson v. State, 12 Mo. 592; Fanning v. State, 14 Mo. 386; *In re:* Spradlend, 38 Mo. 547; State v Cox, 65 Mo. 29; State.v. Marshall, 115 Mo. 383;

State v. Steen, 115 Mo. 474;  State v. Ashcraft, (Mo.) 8
S. W. 216;  State v. Riddle, (Mo.) 78 S. W. 606;  State
v. Wear, 145 Mo. 163;  Kibbler v. Com., 94 Va. 804;  *Ex
parte* McGehan, 22 O. St. 442.)   The discharge provided
for is in effect an acquittal.   (State v. Garthwaite, 23 N. J.
L. 143;  State ex rel. v. Larson, (N. D.) 97 N. W. 537; *In
re.* McMicken, (Kan.) 18 Pac. 473;  State v. Dewey, 73
Kan. 735.)

The following additional cases are cited upon the propo-
sition that the statute is imperative and that the defendant
is entitled to his discharge where the delay was not caused
upon his application and there has been no providential
reason preventing the trial.   People v. Morino, (Cal.) 24
Pac. 892; *In re.* Begerow, 133 Cal. 349;  State v. Faskett,
5 Rich., (S. C.) 255;  State v. Kuhn, 154 Ind. 450;  Guth-
man v. People, 203 Ill. 260;  People v. Heider, 225 Ill.
347;  Dudland v. State, 126 Ga. 580;  Brooks v. People, 88
Ill. 327;  State v. Breaw, 45 Ore. 586;  State v. Riddle, 179
Mo. 287;  State v. Larson, 12 N. D. 474;  Graham v. State,
(Ga.) 57 S. E. 1055;  State v. Pratt, (S. D.) 107 N. W.
538;  State v. Van Waters, 36 Wash. 358;  State v. Kelli-
son, 56 W. Va. 690;  State v. Wigger, 196 Mo. 90;  Newling
v. People, 221 Ill. 166;  Shakel v. People, 111 Ill. App. 509;
*In re.* Jay, (Ida.) 79 Pac. 202;  State v. McDaniel, (Del.)
54 Atl. 1056;  Lowe v. State, 118 Wis. 641;  State v. Camp-
bell, (Kan.) 85 Pac. 784;  Burnett v. State, (Ark.) 88 S. W.
956;  People v. Farrington, 140 Cal. 656;  People v. Chad-
wick, 143 Cal. 116.   The following cases sustain the prop-
osition that legislative provisions similar to our statute con-
stitute a construction of the constitutional provision.   Shakell
v. People, 111 Ill. App. 509;  Ochs v. People, 124 Ill. 399;
People v. Matson, 129 Ill. 591;  State v. Larson, 12 N. D.
474;  Graham v. State, (Ga.) 57 S. E. 1055;  State v. Pratt,
(S. D.) 107 N. W. 538.

The fact of the defendant's confinement in the peniten-
tiary constitutes no excuse for the failure to bring him to
trial.   It cannot logically be asserted that he could not have

been brought to trial by reason of his confinement in the penitentiary. If he had been needed for any purpose whatever in any judicial proceeding before any court in the state, his presence could have been secured. Even at common law an attainted man could be reached by the writ of *habeas corpus ad prosequendum.* It is a matter of common knowledge that a prisoner confined in the penitentiary may not only be brought to trial for an offense committed there but for a previous offense. This is elementary. Section 5382 applies by its own terms to any person in prison; and, as the county jail and the state penitentiary are equally a prison, the statute necessarily applies in one case as well as in the other. A "prison" means any place where persons convicted of or charged with a crime are confined, either awaiting trial or serving a sentence, and therefore, includes a penitentiary. (2 Abb. L. Dict.)

The object of the administration of the law is not to defeat justice but to do justice, and its object might easily be frustrated if a person confined in a penitentiary for a period of years could not be brought to trial for another offense until the expiration of his first term of confinement; and the principle must apply whether the term be long or short. It seems to be well settled that a person confined in a penitentiary under a sentence may be tried for another offense before the expiration of his sentence. (3 Blackstone Com. (Church's Ed.) 686-688; 4 Id., (Chase's Ed.) 1034-1039; 1 Abb. Law Dict., 105-106; 1 Bish. Cr. L., Secs. 953, 966-970; 21 Cyc. 353; People v. Hong Ah Duck, 61 Cal. 387; People v. Majors, (Cal.) 3 Pac. 597; People v. Flynn, (Utah) 26 Pac. 1114; Clifford v. Dryden, (Wash.) 72 Pac. 96; State v. Connell, 49 Mo. 282; Dudley v. State, 55 W. Va. 472.)

Under the circumstances and upon the authorities we think it must be held that neither the district court of Albany County nor any other court has any right to try the defendant under the pending information, and that he is entitled to an immediate discharge.

*S. C. Downey,* County and Prosecuting Attorney of Albany County, and *N. R. Greenfield,* County and Prosecuting Attorney of Carbon County, for the State.

The questions reserved do not seem to involve anything more than the construction of the statutes, and we fail to see that they present a constitutional question. The constitutional provision relating to a speedy trial means that the accused shall have a speedy trial in view of all the circumstances in the case, and hence what would be a reasonable time in one case might be wholly unreasonable in another. The spirit, purpose, intent and history of the constitutional and statutory provisions on the subject should be taken into consideration in construing and applying them as well as the strict letter of the law. The purpose of such provisions is undoubtedly to prevent oppression and vexatious delays on the part of the State, after a defendant has been informed against and imprisoned. In the case at bar the State has done nothing to prevent the defendant from being placed on trial. While he was confined in the penitentiary the other charge remained pending against him, and the State was at all times willing to prosecute him. The theory of the State was and is that it was the duty of the defendant to present himself to the court if he desired a trial before the expiration of his other sentence. By going to the penitentiary he placed himself in practically the same position as though he had become a fugitive from justice.

It has been repeatedly held that such a statute does not apply in case of a mistrial, providential hindrance, failure to secure a jury, destruction of a court house, *nolle prosequi* and filing of a new information, or want of time to try the case; and the authorities are uniform in holding that the statute does not apply to a prisoner who has escaped. Had the defendant been imprisoned by reason of the information in this case, it, perhaps, would have devolved upon the prosecution to produce him for trial within the statutory time, but such is not the case. Had he been desirous of a trial while in the penitentiary he might easily have secured

appropriate orders from the court having jurisdiction for the purpose of being placed on trial, and it was his duty to do so.  (Meadowcroft v. People, 163 Ill. 56.)  The statute does not apply where the defendant is confined in the penitentiary for another offense.  (State v. Brophy, 8 O. Dec. 698; Gillespie v. People, 176 Ill. 238; 56 L. R. A. 513 and note.)

As only a constitutional question can be reserved the statute we assume is in no way involved in this proceeding, and the only question that will be determined is whether or not the defendant will have had a speedy trial in view of our constitutional provision should he be now placed on trial upon the pending information.  Counsel for the State, however, are willing and desirous that the right of the defendant under the statute as well as the constitution be decided, since the same proposition would be again presented to the district court, should it be held that this court has no jurisdiction to determine the reserved questions.  The following cases are cited in support of the construction of the statute and constitutional provisions contended for by the State.  State v. Tyre, (N. J.) 67 Atl. 199; Erwin v. State, 29 O. St. 186; Johnson v. State, 42 Id. 207; *Ex parte* McGehan, 22 Id. 444; McGuire v. Wallace, 109 Ind. 284; Leisenberg v. State, 60 Neb. 628; Cern v. State, (Neb.) 87 N. W. 336.

POTTER, CHIEF JUSTICE.

This case was sent to this court upon an order of the District Court of Albany County for a decision upon certain reserved questions certified to be important and difficult and to have arisen upon a motion filed by the defendant for his discharge from further prosecution under a pending information charging him with the murder of Thomas J. King, on the ground that he had not been brought to trial within the time required by law.  The agreed facts are substantially as follows:

On or about April 22, 1903, the defendant, Frank J. Keefe, was arrested on the charge of murder for the killing

of Thomas J. King and John Baxter, and committed to and confined in the county jail of Carbon County to answer said charges. On May 22, 1903, two informations were filed in the District Court of Carbon County charging him with murder in the first degree, one charging the killing of John Baxter, and the other the killing of Thomas J. King, both crimes being charged to have been committed April 20, 1903. The defendant was arraigned upon both informations and pleaded not guilty, and upon his application a change of venue in both cases was granted to Albany County, and the papers were regularly transferred to and filed in the District Court of Albany County August 13, 1903, and the defendant at or about the same time was removed to the county jail of the last named county and was therein confined and imprisoned to await trial or further proceedings upon both informations.

At the following September term of court the defendant was tried upon the information charging the killing of Baxter and was found guilty of manslaughter by a verdict returned on November 6, 1903, and on November 23, 1903, was sentenced to imprisonment in the state penitentiary for the period of four years. He was immediately thereafter taken to the penitentiary, which is located in Rawlins, the county seat of Carbon County, and was there imprisoned until March 12, 1907, when he was discharged by reason of the expiration of the term of his sentence, less the statutory allowance of time for good behavior.

On September 7, 1903, while the two cases aforesaid were pending in the District Court of Albany County, another information was filed in the District Court of Carbon County charging the defendant jointly with one William Keefe, with the murder of Thomas J. King, in which information it was alleged that William Keefe was a fugitive from justice, for which reason the information was filed without a preliminary examination. William Keefe was never arrested upon this information, but on March 12, 1907, a bench warrant was issued upon it and the defendant was arrested thereon at or about the time of his release from the peni-

tentiary, and confined in the county jail of Carbon County. He was arraigned March 26, 1907, and interposed a plea to the jurisdiction of the court upon the ground, among others, that the information filed May 22, 1903, charging him with the same crime for the killing of the same person was pending upon the change of venue aforesaid in the District Court of Albany County. The plea to the jurisdiction was overruled, a plea of not guilty was entered for him upon his standing mute, and the case was set for trial, whereupon a writ of prohibition was applied for in this court to restrain further proceedings, and after a hearing an order was entered by this court on March 21, 1908, prohibiting the District Court of Carbon County from further proceeding against this defendant upon said information during the pendency of the case in the District Court of Albany County upon the first information. (See Keefe et al. v. District Court, 16 Wyo. 381, 94 Pac. 459.)

On March 25, 1907, following defendant's release from the penitentiary, an order was entered in the District Court of Albany County for the issuance of a bench warrant for the apprehension of this defendant, which warrant was duly issued, directed to the sheriff of Albany County, but was not executed, for the reason that the judge of the District Court of Carbon County would not allow the prisoner to be taken out of that county. The present motion for defendant's discharge was filed March 23, 1908, two days after the order of this court prohibiting further proceedings in Carbon County upon the information last filed, during the pendency upon change of venue to Albany County of the case upon the first information. Upon the filing of this motion the District Court of Albany County caused the issuance of another bench warrant, upon which the defenant was arrested and imprisoned in the county jail of Albany County, and he was there confined at the time the present motion was submitted to the District Court.

The pending motion is not the only one filed for the same purpose. It was preceded by other motions and proceedings during the time of defendant's imprisonment

in the penitentiary, having for their object either his discharge or trial. On February 4, 1905, defendant's counsel filed a motion for his discharge, upon the ground that having been in prison he had not been brought to trial before the end of the second term of the court after the information was filed, and the delay had not happened upon his application. That motion was denied in March, 1905, to which ruling an exception was taken. In May, 1905, the prosecuting attorney of Carbon County and the prosecuting attorney of Albany County each appeared in the District Court of the last named county and moved that the case upon the information charging the killing of King be set down for trial, and over defendant's objection it was set down to be tried on the 18th day of September, 1905. The particular ground of the objection to the setting of the case for trial on defendant's behalf is not stated in the order of the court, but it is apparent from the subsequent proceedings that the position taken by counsel for defendant was that he was entitled to be discharged for unreasonable or unlawful delay in bringing him to trial. That is to say, the objection was not to setting the case for trial, if one was then authorized by law, but that because of delay the prosecution had lost the legal right to try the defendant against his objection on that ground.

After the case had been so set for trial, and on August 13, 1905, the defendant, by his counsel, made a motion in writing to the effect that his removal from the penitentiary to the county jail of Albany County be ordered to enable him to consult with his counsel "and prepare for his trial * * * * and for certain pleas to the information which he shall ask to have substituted for his former plea of not guilty, and if said pleas are overruled to prepare for his trial, in order not to delay the court." Thereupon the court entered an order requiring that the defendant be so removed on September 16, 1905, to await his trial on September 18, 1905, "and in order that he may consult with his attorneys and counsel to be employed by him in the preparation of his defense in this cause, and for such other

purposes as may be necessary." Notwithstanding that or-
der, and the fact that a certified copy thereof was duly
served upon the warden of the penitentiary, it was not
complied with. On September 18, 1905, the day set for
his trial, as aforesaid, defendant's counsel moved for an
immediate trial; and again on September 25, 1905, another
motion was filed on behalf of the defendant demanding a
speedy trial at that term of court, it being stated in the
motion that defendant would apply to be discharged upon
being brought before the court for trial, and would also
apply to withdraw his plea of not guilty and substitute
therefor the plea of former jeopardy, based upon his
conviction under the information charging the killing of
John Baxter, which, it was alleged, was for the same of-
fense charged in the pending information. These motions
for a speedy trial—so-called—were not specifically ruled on.

In addition to the above, the agreed statement of facts
contains the following:

"After the aforesaid case, to-wit, the case in which the
defendant was charged separately with the murder of said
King, was transferred by change of venue to the Albany
County court, as aforesaid, to-wit, on the 13th day of
August, 1903, the said case was, at each subsequent term
of the said Albany County court, placed upon the trial
docket by the clerk thereof; that at each of said terms
of court the said defendant, by his counsel acting for the
purpose of making said motion only, demanded a trial,
and at each of said terms of court, the State, by the county
and prosecuting attorney of Albany County, announced
itself ready for trial, and stated at the time that the case
might be set down for trial, but no order of the court was
made or entered of record except as in this agreed state-
ment of facts is hereinbefore set forth; but that by rea-
son of the absence of the defendant, he being then confined
in the Wyoming state penitentiary, as hereinbefore set forth,
the court announced orally in open court that it would not
set said case for trial until defendant was produced in
court."

"That neither on the said 4th day of February, 1905, when the aforesaid application of defendant to be discharged was made to the court, did the court make, nor upon the present application of the defendant for discharge has the court made, any order setting forth that the said court was or is satisfied that there was or is material evidence on the part of the state which could not then or cannot now be had, or that reasonable exertions had or have been made to procure the same, or that there was or is just ground to believe that such evidence could or can be had at the succeeding term of court; that the State did not upon the first of the aforesaid applications of the defendant to be discharged make any application for continuance; that the State has not made any such application for a continuance upon the present application of the defendant for discharge; and that the defendant has not, at any time, made any application for continuance."

After the denial by the District Court of Carbon County of the defendant's plea to the jurisdiction upon the information filed September 7, 1903, and the entering of his plea of not guilty thereto he was admitted to bail by said court upon his application, and having furnished the required bond was released from custody until his arrest under the bench warrant issued March 25, 1908, by order of the District Court of Albany County.

The questions reserved for decision are substantially as follows:

1. Is the defendant entitled to his discharge and the dismissal of said action by reason of the order in 1905 for his removal from the penitentiary to the jail of Albany County to await his trial, set for the 18th day of September, 1905, and the preceding order setting said cause for trial, and the motions of the defendant for speedy trial, filed on the 18th and 25th days of September, 1905, upon which two motions no action was taken by the court except as shown in the agreed statement of facts?

2. Was the defendant entitled to his discharge upon his motion, filed February 4, 1905?

3. Should the pending motion of the defendant be granted?

4. Is Section 5382, Rev. Stat. 1899, the legislative construction of Section 10, Article I of the Constitution, giving to a defendant the right to a speedy trial, whereby the Legislature has placed a limit upon the time within which such defendant must be brought to trial; and if an application for discharge is made by a defendant, under Section 5384, and the court is not satisfied that there is material evidence on the part of the State, which can not then be had, or that reasonable exertions have been made to procure the same, or that there is just ground to believe that such evidence can be had at the succeeding term of court, and there is no application for continuance on behalf of the State, does it become incumbent upon the court to discharge such defendant upon his application?

5. Is it now incumbent upon the court to discharge the defendant upon his application, there being no showing on the part of the State for continuance, in case the court should be satisfied that there is no material evidence on the part of the State which cannot now be had, or that reasonable exertions have been made to procure the same, or that there is just ground to believe that such evidence can be had at the succeeding term of court?

6. Is it a good and sufficient defense to an application by a defendant for his discharge, under the provisions of Sections 5382 and 5384, that he is incarcerated in the penitentiary at the time such motion is made, under a previous sentence of the court; and if the only reason why the defendant was not brought to trial within the time specified in Section 5382 was that he was was incarcerated in the penitentiary under the previous sentence, is that a sufficient defense to said application for discharge?

7. Under Section 10, Article I of the Constitution granting to every defendant a speedy trial, has the defendant, under the facts as set forth in the agreed statement, had a speedy trial; and would he, if he were to be tried at the present time, have a speedy trial, as contemplated by

said constitutional provision and as provided in Sections 5382 and 5384, Revised Statutes of 1899; and should he, under the agreed statement of facts, be discharged and not subjected to a trial under the information filed in this case?

The questions thus stated require a consideration of the following constitutional and statutory provisions:

Section 10 of Article I of the Constitution declares that "in all criminal prosecutions the accused shall have the right * * * * to a speedy trial." The statute provides as follows:

"If any person indicted for any offense and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after such indictment is found, he shall be entitled to be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." (Sec. 5382, R. S. 1899.)

"If any person indicted for any offense, who has given bail for his appearance, shall not be brought to trial before the end of the third term of the court in which the cause is pending, held after such indictment is found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happens on his application, or be occasioned by the want of time to try such cause at such third term." (Id. sec. 5383.)

"If when application is made for the discharge of a defendant under either of the·last two sections, the court shall be satisfied there is material evidence on the part of the state which cannot then be had, that reasonable exertions have been made to procure the same, and that there is just ground to believe that such evidence can be had at the succeeding term, the·cause may be continued and the prisoner remanded or admitted to bail, as the case may require." (Id. sec. 5384.)

Another section provides that all provisions of law, applying to prosecutions upon indictments, to writs and pro-

cess therein, motions, pleadings, trials and punishments, and to all proceedings in cases of indictment, shall in the same manner and to the same extent, as near as may be, apply to informations and all proceedings and prosecutions thereon. (Id. sec. 5317.)

It is apparent that the ultimate question here involved is whether upon the facts the delay in prosecuting the defendant upon the pending information has resulted in depriving him of the right to a speedy trial within the meaning of the constitutional provision, and, in that connection, whether the statutory provisions quoted above were applicable to the defendant during the term of his imprisonment in the penitentiary, or whether the fact of his conviction, sentence and imprisonment upon the one information furnishes a sufficient excuse for not having brought him to trial upon the other. Indeed, that is practically the sole question that has been argued upon the merits of the case, it being contended on the one hand that the defendant having been in prison comes strictly within the provisions of sections 5382 and 5384, and on the other that while in the penitentiary serving the sentence imposed upon his conviction of another offense, the statute did not apply, because he was not then and there detained by virtue of any commitment upon the pending information.

A preliminary question of jurisdiction has been suggested. While expressing a preference that the question be decided upon this hearing, thereby saving the prosecution as well as the defendant much trouble and expense should the defendant be entitled to be discharged, counsel for the State suggest that the questions reserved for decision seem to require nothing beyond the construction of the statute, and that since constitutional questions only are authorized by law to be brought here in this manner for decision, the jurisdiction of the court is doubtful.

But we entertain no doubt of the jurisdiction of the court in this proceeding. It is true that none but a pending constitutional question may be reserved and sent to this court for decision upon the order of a district court. (R. S.

1899, sec. 4276, as amended by ch. 72, Sess. Laws, 1903.) But the questions here reserved are clearly constitutional, for they involve the constitutional right of an accused in a criminal prosecution to a speedy trial, which right is claimed to have been violated in this case. The statute supplements the constitutional provision and secures, or provides a method for securing the right thereby declared. It is to be regarded as enacted for the purpose of rendering the constitutional guaranty effective, and as a legislative declaration of what is and what is not, under the circumstances named, a reasonable and proper delay in bringing an accused to trial in respect of his constitutional right aforesaid. The authorities uniformly hold that such statutes are enacted for the purpose of enforcing the constitutional right, and that they constitute a legislative construction or definition of the constitutional provision— a provision incorporated in most of the state constitutions as well as in the constitution of the United States. (Newlin v. People, 221 Ill. 166; Cummins v. People, (Colo. App.) 34 Pac. 734; State v. Kuhn, 154 Ind. 450; In re McMicken, 39 Kan. 406; Benton v. Com., 91 Va. 782.)

Two regular terms of the District Court are required by law to be held each year in Albany County, one beginning on the second Monday in March and one beginning on the second Monday in September, and there is no claim that the terms provided for were not held after the information was filed in that court. Therefore, if the statute applies to the case the defendant would be entitled to be discharged, unless the fact of his imprisonment in the penitentiary constitutes a sufficient excuse for the delay without his consent in bringing him to trial, no other reason for the delay being asserted or even suggested. If the statute does not apply it will be necessary to inquire whether, under circumstances such as are here disclosed, a convict is within the protection of the constitutional guaranty of a speedy trial, and if so, whether the trial of the defendant has been so unreasonably delayed that to now place him

upon trial against his objection will deprive him of his constitutional right.

That an accused should be granted a trial without unnecessary or unreasonable delay is not a new idea in criminal jurisprudence. In theory, at least, the right may be said to have been recognized at common law. Under a commission to the judges of general goal delivery they were empowered to try and deliver every prisoner, whereby the jails were generally cleared at least twice in each year. (12 Cyc. 498; 4 Bl. Com. ch. 19; U. S. v. Fox, 3 Mont. 512; 2 Hawkins' P. C. ch. 6; Cummins v. People, *supra.*) And by the habeas corpus act of 31 Car. II c. 2 (1680), it was provided, among other things, "that every person committed for treason or felony shall, if he requires it at the first week of the next term, or the first day of the next session of *oyer and terminer,* be indicted in that term or session, or else admitted to bail, unless the King's witnesses cannot be produced at that time; and if acquitted, or if not indicted and tried in the second term, or session, he shall be discharged from his imprisonment for such imputed offense." (3 Bl. ch. 8, p. 136; 15 Am. & Eng. Ency. L., 2nd Ed., 129 & note 6.)

The term "speedy trial" as it occurs in the constitution has been judicially interpreted as meaning generally a trial as soon after indictment as the prosecution can with reasonable diligence prepare for, regard being had to the terms of court. (12 Cyc. 498.) A trial "conducted according to fixed rules, regulations and proceedings of law, free from vexatious, capricious and oppressive delays." (6 Ency. L., 2nd Ed., 993.) "A trial regulated and conducted by fixed rules of law, and any delay created by the operation of those rules does not work prejudice to any constitutional right of the defendant." (Church on Hab. Corp., sec. 254; Sample v. State, 138 Ala. 259.)

In United States v. Fox, 3 Mont. 512, the speedy trial, to which an accused is entitled under the constitution, is stated to be "a trial at such a time, after the finding of the indictment, regard being had to the terms of court, as

shall afford the prosecution a reasonable opportunity, by the fair and honest exercise of reasonable diligence, to prepare for a trial; and if the trial is delayed or postponed beyond such period, when there is a term of court at which the trial might be had, by reason of the neglect or laches of the prosecution in preparing for trial, such delay is a denial to the defendant of his right to a speedy trial."

In *Ex parte* Stanley, 4 Nev. 116, it is said: "But what is to be understood by a speedy trial is the embarrassing question now to be determined. It is very clear that one arrested and accused of crime has not the right to demand a trial immediately upon the accusation or arrest being made. He must wait until a regular term of the court having jurisdiction of the offense with which he is charged, until an indictment is found and presented, and until the prosecution has had a reasonable time to prepare for the trial. Nor does a speedy trial mean a trial immediately upon the presentation of the indictment or the arrest upon it. It simply means that the trial shall take place as soon as possible after the indictment is found, without depriving the prosecution of a reasonable time for preparation. The law is the embodiment of reason and good sense, hence, whilst it secures to every person accused of crime the right to have such charge speedily determined by a competent jury, it does not exact impossibilities, extraordinary efforts, diligence or exertion from the courts, or the representatives of the state; nor does it contemplate that the right of a speedy trial which is guaranteed to the prisoner shall operate to deprive the state of a reasonable opportunity of fairly prosecuting criminals."

The Legislature of this state has determined for us, not unreasonably it seems, what, in certain cases at least, is to be regarded as a speedy trial within the meaning of the constitutional requirement. As to a defendant indicted or charged by information and committed to prison it is in effect declared that a speedy trial means a trial before the end of the second term of court after indictment found or information filed, unless the delay shall happen on the

prisoner's application, and that as to a defendant out on bail it means a trial before the end of the third term of court, unless the delay happens on his application, or for want of time to try the case; and unless in either case upon an application of a defendant for discharge, the court is satisfied, notwithstanding the lapse of such terms that there is material evidence for the state not then obtainable, but which the prosecution has made reasonable exertions to obtain, and that there is just ground for believing the same obtainable at the succeeding term; in which event the court is authorized to grant a continuance and remand or admit the defendant to bail.

Under similar statutes a delay caused by accident or unforeseen circumstances, though not specifically mentioned, has been held sufficient to prevent a defendant's discharge, such as the sudden illness of the judge which requires an adjournment of the court or term or renders the holding thereof impossible, and inefficient legislation to enable a jury to be obtained. In Tate's case, 76 Ala. 484, it was said: "When there have been legislative enactments, reasonably adapted to secure a speedy trial, the constitutional guaranty can not operate to discharge the accused, because of mistaken legislation, or because of a failure to foresee and provide for every contingency which may occasion delay. * * * * The accused is not entitled to a discharge by reason of any delay made necessary by the law itself." That statement is quoted approvingly in Sample v. State, 138 Ala. 259, where a delay was caused through the lack of statutory authority in the court to issue a special venire for a jury, the regular jury box having been exhausted. There is, however, some conflict in the authorities as to what accidental or unforeseen causes will render a delay excusable under such statutes. The right granted by the constitution may be waived, as by consent to continuances, and perhaps the failure of one out on bail to present himself for trial as required by the conditions of his bond; and the privilege of insisting upon the right may be lost for a time, as where an accused escapes from

prison or becomes a fugitive from justice. In this case there is no question of accidental delay; nor is there a question of waiver or loss of the right, unless an accused becomes deprived of it during imprisonment in the penitentiary for another offense, the only reason here assigned as an excuse for not bringing on a trial being the fact of defendant's commitment to the penitentiary under another information before the expiration of the time limited for bringing him to trial upon the pending one, and his continued imprisonment therein for more than three years.

Two cases are cited by counsel for the State as sustaining their contention that the statute does not apply to a defendant serving a term of imprisonment in the penitentiary under sentence for another offense. One of the cases cited is State v. Brophy, 8 O. Dec. 698, a decision of one of the courts of common pleas of Ohio. There, the defendant was sent to the penitentiary for four years for forgery, and thereupon other indictments against him were "laid away." In disposing of the defendant's subsequent motion under the statute for his discharge so far as the other offenses were concerned, the court merely said: "He was practically dead as a civilian, and before he could make this demand he must serve his sentence. The sections above referred to do not apply to a man who is in the penitentiary. He must be either in jail or out on recognizance." No reference was made to the constitutional right of an accused to a speedy trial. The proposition that a convict cannot be tried for another offense is unsound. The case, however, supports the State's contention on the construction of the statute.

The other case is that of Gillespie v. People, 176 Ill. 238. In that case two defendants, Dunn and Gillespie, had been indicted at the March term, 1897. A trial was had at the following November term, and they were convicted. Prior to the trial each defendant moved for his discharge because he had not been tried within the time provided by statute. The statute relied on was one applying to any person committed for a criminal, or supposed criminal,

offense. In reference to Gillespie the court said: "The statute could not be applied to the case of the defendant Gillespie in any event, since he was not committed for this offense. He pleaded guilty to another felony at the March term, 1897, of the same court, and has been in the state penitentiary at Chester ever since, except when brought into court and tried on this charge. This was sufficient answer to his application in any event." It does not appear from the report of the case that Gillespie had ever been committed or even arrested upon the particular charge; the indications are that he had not. It is stated in the opinion that he pleaded guilty to another felony at the March term, but the date of such plea is not given. It is, however, stated that the indictment as to which the right of discharge was asserted was returned on March 23, 1897, and that the defendant was arraigned thereon and pleaded not guilty at the November term, on November 12, 1897. It would seem probable, therefore, that Gillespie had not, in fact, ever been committed upon the indictment complained of, but being already in the penitentiary was brought therefrom to be placed on trial. Indeed, for all that appears in the reported matter, he may have been taken to the penitentiary before the return of the indictment. However this may be, the question was disposed of in the opinion by the statement above quoted, which does not explain the reasons upon which it was concluded that the statute did not apply further than that the defendant had not been committed for the offense. It does not appear that the constitutional right of a speedy trial in the absence of a statute applying to the case was insisted upon, nor that there had been a delay which could reasonably be declared capricious, vexatious or oppressive.

In a case in New York, the original report of which we have not seen, a conclusion seems to have been announced opposed to the proposition insisted upon by the prosecution. The case is referred to in the notes to In re Begerow, 56 L. R. A. 513, and it is there said to have been held in People v. Smith, 2 N. Y. Cr. Rep. 45, that

a defendant was entitled to be discharged on his own recognizance where several indictments had been found against him at the same term, and under one he had been sentenced to five years' imprisonment, and at the expiration of the sentence it was sought to try him on another. The court is reported as saying: "They should all be tried when the witnesses are alive and accessible, and when the testimony for both sides is readily to be had."

Under a statute plainly applicable to a defendant, it was held in West Virginia that his illegal confinement in the penitentiary for another offense was not a sufficient excuse for a failure to try him upon a pending indictment within the period prescribed by the statute. (Dudley v. State, 55 W. Va. 472.) The statute applied to "every person charged with felony and remanded to the circuit court for trial." The defendant, who had been previously sentenced to the penitentiary for the term of 18 years, was released upon a conditional pardon, and shortly thereafter was arrested upon another charge, and after such arrest and before indictment found was redelivered to the penitentiary by executive order to serve out the balance of his previous sentence, by reason of the breach of the condition of his pardon. An indictment was afterwards returned, charging him with the offense for which he had been last arrested, resulting in his being brought from the penitentiary to the court for trial, and, the state not being ready for trial, his return to the penitentiary to be confined therein, as ordered by the court, under the former sentence, and later an order on motion of the prosecution retiring the indictment from the docket. He was subsequently released from the penitentiary on habeas corpus by reason of the illegality of the executive order restoring him thereto. Immediately upon such release he was again arrested and lodged in the jail of the county where the indictment aforesaid was pending, and thereupon he petitioned for discharge upon habeas corpus. The court said, after quoting the statute:

"The only excuse given for not trying the petitioner as required by this section is that because he had been illegally committed to the penitentiary by order of the governor. It is not claimed that he could not have been tried, as he was in the custody of the law and under order of the court, but that the court and prosecuting attorney were laboring under the belief that he was legally confined in the penitentiary for his former offense, and that would render it unnecessary to try him under the second indictment. The petitioner was not afforded the opportunity to insist on a speedy trial, but was illegally held in custody, and if the indictment had remained a live indictment on the docket, while the state was illegally holding him, he might well insist that he should be discharged under the foregoing section, as his illegal detention does not come within any of its provisions, and he might well claim as he was subject to the order of the court that he was being held to answer the pending indictment against him, as this was the only legal cause for his detention." It was also held that the retirement of the indictment from the docket without the prisoner's consent, amounted to the same thing as a dismissal for failure of prosecution.

In the Colorado case of In re Garvey, 4 Pac. 758, a defendant had been convicted of murder, and sentenced to the penitentiary for life. The judgment was reversed on the ground of the repeal of the law under which the conviction was had, and it being held that the defendant could be prosecuted under the indictment only for manslaughter, the case was remanded, with directions to proceed according to law. Thereupon, without further trial, the defendant was, at the April term, 1883, of the district court, sentenced to the penitentiary for eight years, and was imprisoned accordingly. At the following December term of the supreme court he was on *habeas corpus* released from the penitentiary and remanded to the county jail, on the ground that his sentence without trial was void. Upon being again brought before the district court for trial, he moved to be discharged under the statute, for, although committed for a

criminal matter, he had not been' tried on or before the second term of the court having jurisdiction of the offense. *Habeas corpus* was then applied for, and in disposing of the case the supreme court went back only to the reversal of the first judgment, in May, 1883, and held that as at the time of such reversal the April term of the district court was in session, and it was followed by the September term, 1883, and the January term, 1884, without a trial, the defendant was entitled to be discharged upon his motion at the April term, 1884, notwithstanding that from said April term, 1883, to some time in the following December term of the supreme court he had been in the penitentiary under the aforesaid sentence. The Colorado statute is like that of Illinois.

In an early case in South Carolina it appeared that two indictments had been found against a prisoner for passing counterfeit bank bills. He demanded trial on both, but was tried only on one, convicted and sentenced to be hung. Afterwards he was pardoned by the governor and set at liberty; whereupon, he was again arrested on the second indictment. Upon an application for his discharge on *habeas corpus*, a majority of the judges were of the opinion that he was entitled to be discharged. The reasons for such opinion were stated to be as follows: "The conviction on one indictment did not prevent the state from proceeding on the other. The prisoner demanded his trial in both cases, and he ought to have been tried at the second court, after demanding trial on both indictments, or discharged as to the indictment not proceeded on. The solicitor, and the court, should not have calculated on his suffering death on the conviction first tried. A new trial might have been granted, and the prisoner admitted to bail, or judgment might have been arrested, or (as it happened) there might be a prospect of his being pardoned. To keep him in confinement under these circumstances would be contrary to the spirit and intention of the *habeas corpus* act." (State v. Stalnaker, 2 Brevard, (S. C.) 44.)

In State v. Thompson, 32 Minn. 144, it appeared that three indictments had been found against the defendant at the same term, charging several offenses of embezzlement, that he had been arraigned on one, and at the following term tried and acquitted. He was then arraigned upon another, and the trial was continued from term to term, and remained pending. Finally at a term held more than a year after the finding of the indictments, he was arraigned upon the third. He moved that it be dismissed. The court. said: "No sufficient cause is shown for the delay of the state in proceeding to an arraignment. Reasons which may have been sufficient for the continuance of the trial upon the other indictments were not a sufficient cause for not arraigning the defendant upon all indictments against him. The indictment should have been dismissed."

In the cause before us, it does not seem to be claimed that defendant's conviction and sentence upon the one information or his imprisonment thereunder in the penitentiary rendered it legally impossible to try him upon the other which remained pending. The ancient doctrine of *autrefois attaint* has been generally repudiated by the courts of this country. (9 Cyc. 875.) And hence it is well settled that a conviction and sentence for one felony is not a bar to an indictment or trial for another, and that a convict, while imprisoned in the penitentiary, is not exempt from trial and sentence for another crime, whether charged to have been committed before or during such imprisonment. (9 Cyc. 875, 876; 7 Am. & Eng. Ency. Law, 497; Thomas v. People, 67 N. Y. 218; Singleton v. State, 71 Miss. 782; Peri v. People, 65 Ill. 17; People v. Majors, 65 Cal. 138, 3 Pac. 597; Coleman v. State, 35 Tex. Cr. 404; Rigor v. State, 101 Md. 465; State v. Wilson, 38 Conn. 126; People v. Flynn, (Utah) 26 Pac. 1114; Brown v. State, (Tex.) 95 S. W. 1039; Huffaker v. Comm. (Ky.) 98 S. W. 331; Clifford v. Dryden, 31 Wash. 545, 72 Pac. 96; Henderson v. James, 52 O. St. 242; Kennedy v. Howard, 74 Ind. 87; State v. Connell, 49 Mo. 282; Ex parte Ryan, 10 Nev. 261.)

In Thomas v. People, *supra,* a defendant was tried and convicted of murder in the first degree for killing a fellow prisoner in the Auburn (New York) state prison. On error it was contended that the defendant could not be sentenced to be hung before the expiration of the term he was serving in the penitentiary. The court held otherwise, and said:

"This is a novel claim, and seems to be based upon the idea that a prisoner under sentence has a right to serve out his term. He has no such right. His term of service may be curtailed by legislation or by executive pardon, or he may be turned loose by the courts or the prison officials without violating any of his legal rights. Convicts, like other persons, are under the protection of the law and are amenable to its penalties. The laws for the punishment of crimes are general and apply to all persons in the state. Provision is made (Laws of 1847, chap. 4) for taking prisoners out of the state prison for trial upon any indictment found against them. In all cases, but such crimes as are punishable with death, there is no practical difficulty, as the sentence may provide that the term shall commence after the expiration of the former term. (1 Bishop on Cr. Law (5th Ed.) sec. 953.)  *  *  *  *  To hold otherwise would give a life convict unlimited license to murder without further punishment."

In Rigor v. State, *supra,* an indictment had been found against the defendant in the criminal court of Baltimore City. Before being brought to trial thereon he was convicted of felony in the circuit court for Baltimore County, and sentenced to the penitentiary for a term of years. While in the penitentiary in execution of the sentence he was brought into the criminal court of Baltimore City by *habeas corpus* to answer the indictment therein pending. He moved to quash the writ of *habeas corpus* upon the ground that because of his previous conviction and his imprisonment in the penitentiary, he could not be required to answer to the pending indictment. The motion was overruled, and he was required to plead, was tried, convicted and

sentenced, and the case went to the court of appeals on error, the action of the court in refusing to quash the writ of *habeas ·corpus,* in requiring the defendant to plead, and in proceeding with his trial, being assigned as error. The court of appeals in disposing of the case said:

"The penitentiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt. Why should there be·a delay in bringing to trial, on an indictment pending against him, a convict who has not yet completed the service of a previous sentence? No reason can be suggested for such a delay in the case of a convict adjudged guilty of some other offense and actually in execution of a sentence thereunder, that does not apply equally to an individual who has been indicted and has not yet been tried. The situation of the two is identical, except for the single circumstance that in the first instance the criminal who has more frequently violated the law has been tried and convicted for some of his offenses, whilst the other has not. * * * * If the courts should hold that one already convicted, and actually incarcerated under sentence, could not be brought before the court on a writ of *habeas corpus* and tried for some other offense, until the expiration of the first sentence, a temptation to commit a crime for the express purpose of escaping altogether, or at least, of deferring punishment for a previous one, would be held out to the evil-minded and depraved. * * * * If the contention made in the case at bar is sound, the arm of the criminal law would be paralyzed—not a step could be taken towards prosecuting him so long as the convict remained sheltered within the walls of the penitentiary. That is not the law. The criminal court had jurisdiction to bring the plaintiff in error before it and to place him on trial under the indictment there pending against him."

In the Washington case of Clifford v. Dryden, *supra,* a defendant having been tried, convicted and sentenced upon one information was brought out of the penitentiary upon

the order of the court in which the conviction was had
and tried upon another information, which appears to have
been pending at the time of the previous conviction and
sentence. The jurisdiction of the court to so try him on
the second information was upheld.

That the fact of a convict's imprisonment in the peni-
tentiary constitutes no objection to his trial for another
offense, is recognized by our statutes. It is provided that a
convict indicted for an offense committed while he is confined
in the penitentiary, shall remain in the custody of the war-
den subject to the order of the court in which the indictment
may be found. (R. S. 1899, sec. 5316.) And, further, that
good time allowance previously earned by a convict shall
be forfeited if he is convicted by a jury of any offense
committed during his imprisonment. . (Laws, 1907, ch. 18,
sec. 3.)

A more serious question is whether the court had the
power to compel the bringing of the defendant into court
for trial during the term of his imprisonment in the peni-
tentiary, by sending its order therefor to another judicial
district, where the penitentiary was located, inasmuch as
the statute expressly provides for securing the presence
in court for trial on another charge of a convict in the
penitentiary only where he has been accused of an offense
committed while confined therein. The court is authorized
to send its warrant into any other county for the arrest
of a defendant. (R. S. 1899, secs. 5314, 5316.) But such
process would not alone secure immediate control of the
person of the defendant where he is held in the penitentiary
under previous sentence. Except for the purpose of testi-
fying as a witness, a writ of *habeas corpus,* or some writ
or order of that nature, authorized by law, is necessary
to compel a convict serving a sentence in the penitentiary
to be brought before the court; and where his presence
is sought in order to try him upon another charge, the
writ or order will be analogous to, or serve the same pur-
pose, as the common law writ of *habeas corpus ad prose-
quendum.* It may be doubtful whether the statute regu-

lating generally the issuance of and proceedings upon *habeas corpus,* which seems to authorize the writ, when issued by a district court or judge, to be served in any part of the state, applies where release from an alleged illegal restraint is not the object of the writ. The petition for the writ is required by that statute to state that the person on whose behalf it is presented is illegally restrained of his liberty, or the writ may be granted without an application whenever the court or judge has evidence from some proceeding before them that any person within the jurisdiction of the court or officer is illegally imprisoned or restrained of his liberty. (R. S. 1899, secs. 5464, 5466, 5467, 5473.) Had a writ been issued under the statute the defendant might have been thereby brought into court, or the defendant's presence as a witness might have been obtained by a subpoena directed to the warden. (Laws, 1905, ch. 6.) Being in attendance under such writ or subpoena, the court might perhaps have placed him upon trial. (See State v. Wilson, 38 Conn. 126.)

If it be assumed that the court was without the power to lawfully enforce defendant's attendance for trial during his confinement in the penitentiary, then it would appear that the state, having had the defendant within its custody and control and within the jurisdiction of the court, at the September term, 1903, caused or allowed him to be sentenced upon the one conviction and thereupon to be removed to the penitentiary in execution of the sentence, without a trial upon the information that remained pending, and thus practically suspended further proceedings upon that information until the defendant should serve out his sentence or be otherwise discharged.

According to the agreed facts, the defendant, although the statute does not seem to have required him to do so, demanded a trial upon this information at the same term that he was tried and convicted upon the other, and if there was any substantial reason rendering a trial at that term impossible or even inconvenient to the prosecution or the court, it is not disclosed. On the contrary, it is stated

that at that term, as well as at each subsequent term, the prosecution announced itself ready for trial.

Where two informations or indictments for different offenses are pending against the same person, upon each of which · the accused has been apprehended and committed, is it permissible for the prosecution to try and convict him upon one, and cause or allow him to be sentenced and taken to the penitentiary upon such conviction, and thereupon, regardless of the length of the sentence, suspend proceedings upon the other information until the prisoner's discharge from the penitentiary upon the expiration of his sentence or otherwise, and then proceed to try him over his objection, where such delay, if the accused had not been in the penitentiary, would have amounted to a denial of the right to a speedy trial? That seems to be the question in this case. If such action in case of two informations is permissible without violating the constitutional provision, then it would seem that should there be more than two the same proceeding might be repeated as to the second and third, and so on, and the defendant might then be required to serve out each sentence before being tried upon any remaining charge or charges.

The right of a speedy trial is granted by the Constitution ·to every accused. A convict is not excepted. He is not only amenable to the law but is under its protection as well. No reason is perceived for depriving him of the right granted generally to accused persons, and thus in effect inflict upon him an additional punishment for the offense of which he has been convicted. At the time of defendant's trial upon the one information, he was under the protection of the guaranty of a speedy trial as to the other. It cannot be reasonably maintained, we think, that the guaranty became lost to him upon his conviction and sentence or his removal to the ` penitentiary. Possibly in his case, as well as in the case of other convicts, a trial might be longer delayed, in the absence of a statute con-

(9)

trolling the question, than in the case of one held in jail merely to await trial, without violating the constitutional right, for an acquittal would not necessarily terminate imprisonment. However, the purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harrassment of a criminal prosecution and the anxiety attending the same; and hence an accused admitted to bail is protected as well as one in prison. Moreover, a long delay may result in the loss of witnesses for the accused as well as the state, and the importance of this consideration is not lessened by the fact that the defendant is serving a sentence in the penitentiary for another crime.

As has been observed, the statute on the subject is intended to secure the right declared by the constitution, and this should be taken into consideration in construing and applying it. It provides for the discharge in case of delay beyond the specified period without proper excuse of two classes of accused persons: (1) Those committed to prison; (2) Those who have given bail for their appearance. Prior to his sentence, the defendant came within one of these classes, for he had been committed to prison and was there confined upon the pending information, as well as the one upon which he was convicted. Ordinarily an accused will be either committed to await trial or admitted to bail, and by the statute it was evidently intended to cover the case of all persons protected by the constitutional provision. If it should be so strictly construed as to exclude an accused in the situation of this defendant, whose first committment is superseded by one for his confinement in the penitentiary, then his only reliance is the constitutional provision. But such a strict construction will, it seems to us, destroy in some measure the purpose of the statute and be opposed to its spirit. The statute might be strictly interpreted, perhaps, as applying to one committed to prison only during imprisonment, while awaiting trial for the particular offense. It should, however,

be liberally construed, as it favors the accused and is intended to enforce his constitutional privilege. And it seems that no violence will be done to the language employed by holding it to apply where a defendant has been committed to prison to answer to an indictment or information and is retained in custody, though under a substituted commitment for his confinement upon conviction of another offense in the same or a different prison.

To deny the application of the statute to this defendant and others in a like situation would mean a denial also of its application to an accused committed upon an information or indictment, and while so committed sentenced upon a conviction of a misdemeanor under another indictment to imprisonment in the county jail, so that during the period of such sentence the prosecution would be under no obligation, so far as the statute is concerned, to try him upon the pending information or indictment. Such a limited construction should not, in our opinion, be given the statute. In the absence of a statute clearly covering a case like the one at bar, we would be inclined to hold that upon the facts the defendant is entitled to be discharged, because of a violation of his constitutional right to a speedy trial as a result of the unreasonable delay, being guided largely as to what would be a proper and improper delay by the rule laid down by the statute in other cases. The defendant might have been tried at the same term of his conviction upon the other information, or at some time before his sentence, it appearing that the State was prepared for trial, so that even if the sentence and subsequent imprisonment operated to prevent the prosecution from placing the defendant upon trial, there was previously ample opportunity to do so.

The questions relating to the order that should have been made upon defendant's application in 1905 for discharge, are not necessarily involved in a consideration of the pending motion, and need not, therefore, be decided. What has been said in this opinion answers generally the questions proper to be decided, and we need not refer to and announce a decision upon them specifically. The court

decides that the fact of defendant's imprisonment in the penitentiary, under the circumstances set forth in the agreed statement of facts, does not constitute a sufficient defense to the application of the defendant for his discharge; that sections 5382 and 5384 apply to the defendant, and upon the facts the defendant has not had a speedy trial, as provided in the constitution.

BEARD, J., and SCOTT, J., concur.