## Ex parte CLYDE MEADOWS.

No. A-9967.   March 26, 1941.
(112 P. 2d 419.)

354

Hulsey & Hulsey and N. W. Redwine, all of McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J. This is an original proceeding in habeas corpus in which the petitioner, Clyde Meadows, alleges that he is unlawfully imprisoned in the county jail of Comanche county, at Lawton, Okla., and prays for his discharge.

The facts are that on October 2, 1940, the Criminal Court of Appeals handed down an opinion in the case of Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141, in which said opinion a judgment of the district court of Comanche county was vacated and set aside upon petition of Clyde Meadows, who is the petitioner herein, and further remanded the said Clyde Meadows to the district court of Comanche county "to be there proceeded against the same as if no arraignment had ever been held" upon the information filed against him.

The facts in that case show that Clyde Meadows had entered his plea of guilty in the district court of Comanche county to the offense of robbery with firearms, and had been sentenced to serve a term of 40 years' imprisonment in the State Penitentiary. This sentence was pronounced

on April 30, 1932, and the petitioner had been incarcerated in the State Penitentiary from that date until he was delivered by the warden of the State Penitentiary to the custody of the sheriff of Comanche county, respondent herein, in accordance with the opinion of this court in said cause. For a fuller discussion of the facts, reference is hereby made to the opinion filed in Ex parte Meadows, supra.

After said petitioner was taken back to Lawton, his case was set for trial for December 4, 1940. The petitioner then made a second application for writ of habeas corpus before this court, in which he seeks his unqualified discharge for the reason that he has been denied his constitutional and statutory right to a speedy trial.

Article 2, § 20, of the Oklahoma Constitution, Okla. St. Ann. Const., provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed. * * *"

It has been provided by statute that:

"If a defendant, prosecuted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of court in which the indictment or information is triable after it is filed, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." Section 2872, O. S. 1931, 22 Okla. St. Ann. § 812.

Counsel for both the petitioner and the respondent have stated to this court that after an exhaustive search they have not been able to find any recorded case in the United States in which the facts exactly parallel the facts in the instant case.

Each of them cite authorities in their briefs in which cases the petitioner had two or more charges filed against him, and was confined in the penitentiary on one of said charges, and completed serving his time on that charge before being brought to trial on the second offense. Under those circumstances the authorities are divided, although the majority seem to hold that the delay in bringing the defendant to trial was caused by laches on the part of the prosecution and not through any fault of the defendant, and that his constitutional right to a speedy trial had been violated, and the petitioner was accordingly discharged.

Section 2872, supra, has been before the Criminal Court of Appeals many times for construction. In the early case of Head v. State, 9 Okla. Cr. 356, 131 P. 937, 44 L. R. A., N. S., 871, we find the facts more nearly similar to the facts in the case at bar than in any other Oklahoma case. In that case, the defendant was charged by indictment on June 29, 1909. On the 9th day of July, 1909, the court sustained a motion to quash the indictment. The county attorney prosecuted an appeal from that decision to the Criminal Court of Appeals. Other indictments against the same defendant, returned by the same grand jury, were continued during the pendency of the appeal. Pending said appeal, the other cases remained on the docket without any effort on the part of the state to bring the defendant to trial until the 11th day of April, 1911. On that day the defendant filed a motion to dismiss one of these cases then before the court upon the ground that he had not previously been brought to trial, and that the delay in the trial had not been occasioned by his delay or fault, and that he had been denied his constitutional right to a speedy trial.

In the opinion by Judge Furman, this court held that the reasons why the cause was not tried sooner were good

and sufficient; that the burden was on the defendant in support of his motion to dismiss to show that the laches was on the part of the state, through its prosecuting officer; otherwise, the presumption is that the delay was caused by or with the consent of the defendant himself.

The early Kansas case of State v. Campbell, 73 Kan. 688, 85 P. 784, 786, 9 L. R. A., N. S., 533, 9 Ann. Cas. 1203, discusses the history of the Kansas statute, which is similar to the Oklahoma statute, relating to a speedy trial. In that case it is stated:

"It is proper here to refer to the history of the statute insuring to a person indicted and imprisoned or held to bail a speedy trial. By considering the evil sought to be remedied, we are better enabled to construe the statute. When it was enacted it followed in general terms the provisions of similar statutes in the older states, and in them the evil sought to be remedied was one which the English people had struggled against since before the days of Magna Charta and the petition of rights. It recalls the days of tyranny and despotism, when men were allowed to lie in dungeons for long periods without even an opportunity to know the nature of the charge against them. A speedy trial for all accused persons was one of the things insisted upon by the people of England in the first Bill of Rights, and English laws have jealously guarded the right from that time. It is provided for in the first ten amendments of the federal Constitution, being embodied in the sixth of the ten amendments submitted by the First Congress. The guaranty of the federal Constitution, however, has been held not to apply to acts of the Legislatures of the several states or to state courts. Fox v. State of Ohio, 5 How. (U. S.) 410, 12 L. Ed. 213; Murphy v. People, 2 Cow., N. Y., 815. The same provision, or one similar, is found in the Constitutions of most of the states. It is a part of section 10 of our Bill of Rights. The statute is for the purpose of carrying into effect this provision of the Constitution. It was never intended to apply to the facts in a case like the one at bar. Here there was no laches or

delay on the part of the state within the spirit and intention of the statute. The state was doing all within its power to bring the appellant to a speedy trial. A trial was begun, a motion to quash sustained, and the state appealed. This statute must be construed with the one giving to the state the right to appeal from a judgment sustaining a motion to quash the indictment. Code Cr. Proc. § 283; Gen. St. 1901, § 5721. To hold as appellant contends would deny to the state all benefit of the appeal which the statute expressly gives. This cannot be the law. The appeal deprived the trial court of power to proceed further until it was determined, and, in effect, it held in abeyance the provisions of section 5666. Even though appellant had been in prison, unable to furnish bail, while the appeal was undetermined, his right to a speedy trial under this section was in no manner infringed. In People v. Giesea, 63 Cal. 345, the same question arose, and the Supreme Court reversed an order discharging the prisoner. The court said : 'We are of opinion that the case of the defendant does not come within the provisions of the section above referred to. That section has no application where the prisoner has demurred to the indictment, the demurrer sustained, the effect of which ruling had to be gotten rid of by an appeal.' See, also, Marzen v. People, 190 Ill. 81, 60 N. E. 102; Patterson v. State, 50 N. J. L. 421, 14 A. 125; State v. Conrow, 13 Mont. 552, 35 P. 240."

In the early case of McLeod v. Graham, 6 Okla. Cr. 197, 118 P. 160, the Criminal Court of Appeals stated:

"Any delay caused by operation of the rules of law will constitute good cause for continuing a case beyond a second term of the court."

In the opinion it is further stated:

"This rule secures to a defendant his right to a speedy trial, upon the one hand, by protecting him from vexatious, capricious, arbitrary, and oppressive delays, and, upon the other hand, it does not preclude the rights of public justice; for, if good cause for a postponement of a trial exists, the requirements of the statute do not apply.

Were it not for this rule, an arbitrary and capricious judge could punish a defendant indefinitely by confining him in prison, pending a final trial, or, if the defendant was on bail, such a judge could harass and distress him without limit by keeping a groundless accusation hanging over his head and clouding his good name; while, on the other hand, if good cause exists why a case should be continued from term to term of the court, this cause can be made to appear in the record, and the ends of public justice will be protected."

In the case of Ex parte Alpine, 203 Cal. 731, 265 P. 947, 952, 58 A. L. R. 1500, it is stated:

"All of the decisions of this court upon which petitioner relies had to do with a failure to bring the defendant to trial at all within the statutory period, or else are cases in which 60 days had passed after mistrial. In none is the rule contended for by petitioner applied where a new trial has been ordered upon a reversal of the case upon the initiative taken by the defendant. * * *

"The writ of habeas corpus has properly been exalted in fervid language by able exponents of personal liberty. Its beneficent and humane purposes should not be minimized. It came into being during the 'wicked, sanguinary, and turbulent' periods in which monarchy ruled with a heavy hand. Subjects charged with frivolous offenses were forced to languish in prison for long periods of time without being afforded the privilege of having their causes presented to the courts and thereby called to the attention of the public. Mr. Justice Temple, in commenting upon the wisdom and justice of affording persons accused of crime with a speedy, public trial, in Re Begerow [133 Cal. 349, 65 P. 828, 56 L. R. A. 513, 85 Am. St. Rep. 178] said: 'For, no doubt, as said by Blackstone (Commentaries, bk. 3, p. 138), "persons apprehended upon suspicion have suffered long imprisonment, merely because they were forgotten." '

"Of course, Blackstone's observation was directed to persons who had never been brought into the courts for

trial, and the public had no opportunity of being informed as to the oppression which had cruelly been inflicted upon them. No such danger can menace a citizen whose cause has been brought to the attention of the trial and appellate courts of this state and to the public by a public trial and appeal. What we mean to hold is that the writ of habeas corpus is not available to petitioner as a matter of right solely by virtue of section 1382, Penal Code."

The Supreme Court of Missouri, in State v. Haines, 160 Mo. 555, 61 S. W. 621, 624, stated:

"* * * It must now be considered as settled law in this state that in the construction of these sections providing for a discharge that they 'were intended to operate only when there is some laches on the part of the state.' State v. Huting, 21 Mo. 464; State v. Marshall, 115 Mo. 383, 22 S. W. 452; State v. Billings, 140 Mo. 193, 41 S. W. 778. Continuances ordered by the court of its own motion, for want of time to try a case, or mistrials of the case, have never been held to authorize a discharge. * * *"

The rule followed in this state, stated in 14 Am. Jur. p. 863, is as follows:

"In the absence of a proper record affirmatively showing the contrary, the presumption is that the court continued the case for a presumably lawful cause. The burden is on the defendant, in support of his motion to dismiss, to show that the laches was on the part of the state through its prosecuting officer; otherwise, the presumption is that the delay was caused by or with the consent of the defendant himself."

See Head v. State, supra.

In People v. Maniatis, 297 Ill. 72, 130 N. E. 323, 324, it is stated:

"The right to a speedy trial guaranteed to the defendant by the Constitution is only against arbitrary and oppressive delays."

It is said in Commonwealth ex rel. McGurk v. Superintendent of County Prison, 97 Pa. 211:

"It was to prevent wrongful restraints of liberty, caused by malice and procrastination of the prosecutor, producing a willful and oppressive delay in the trial."

With these rules of law so well established, it appears to us that the contention of the petitioner herein is without substantial merit. No doubt, the reason that neither of the parties hereto has been able to cite any recorded cases where the facts exactly parallel the facts herein is because the contention of the petitioner is so fundamentally unsound that no cases have been taken to the higher courts involving this identical question.

The petitioner cites and relies almost wholly upon the cases of In re Garvey, 7 Colo. 502, 4 P. 758, and State v. Keefe, 17 Wyo. 227, 98 P. 122, 22 L. R. A., N. S., 896, 17 Ann. Cas. 161, and the cases therein cited. All of these cases involve a factual situation quite distinct from that presented herein. In re Garvey, supra, involved delays in the trial court subsequent to a reversal by the appellate court of a prior conviction; and the action of the court in releasing the petitioner was based upon the fact that several terms of court had been allowed to pass without a trial of the defendant, at a time when the defendant was subject to the jurisdiction of the trial court and could have been brought to trial.

In State v. Keefe, supra, the defendant had several charges filed against him. He was incarcerated in the state penitentiary upon one charge; and the question arose as to whether a prisoner being held in the penitentiary, pursuant to a conviction and sentence in a certain court, has a right to be tried upon other charges pending against him. The weight of authority seems to be that the failure

of the state to bring the accused to trial while he is so incarcerated in the penitentiary is a violation of his constitutional right to a speedy trial, and base their rule upon the fact that the court where such charges may be pending has the power to produce the prisoner from the penitentiary for the purpose of trial. The defendant, though incarcerated in the penitentiary, is subject to the jurisdiction of the trial court, and that the failure to bring the case to trial is the fault of the state. This question has never been before the Criminal Court of Appeals for consideration, but assuming that the majority rule above set forth is a correct statement of the law, it still does not support the petitioner's position. We do not have a case here which is pending while the petitioner was confined in the penitentiary. But this case is the very identical case in which the petitioner had entered his plea of guilty and received his sentence, which he did not begin to serve until after the expiration of the prior sentence pronounced against him by the district court of Tillman county. As will be shown, after the defendant had entered his plea of guilty in said case, and sentence was pronounced, and he had been taken to the penitentiary to commence serving his sentence, he is the only person who could demand a new trial or ask that the sentence entered on his plea of guilty be vacated. It was not mandatory on the petitioner that he seek to set aside the sentence pronounced against him in said cause. He could have served the entire sentence, and the state could never have questioned the validity of the judgment.

Here we have a case where the state has at all times been ready to prosecute the defendant. In his first application to this court for writ of habeas corpus, the writ was granted because, as insisted by the petitioner herein, the state had been too hasty in trying him. Ex parte Meadows, supra. When the writ was issued in that case and the

petitioner remanded to the custody of the sheriff of Comanche county, the district court of that county immediately set the case for trial, giving the petitioner and his counsel a reasonable time in which to prepare for said hearing. Never has the prosecution shown any inclination to delay the trial. There are no facts from which laches on the part of the state could be inferred.

This petitioner contended in the former case of Ex parte Meadows, supra, that the sheriff of Tillman county erred in not immediately delivering the prisoner to the warden of the State Penitentiary, where he could be serving the sentence assessed against him in Tillman county instead of delivering him to Comanche county for trial there on the bank robbery charge. If such had been done and the petitioner had been delivered to the warden of the State Penitentiary after the sentence of the court had been pronounced in Tillman county, without delivering the petitioner to the authorities in Comanche county, then the cases cited by the petitioner in his brief would have been in point. The authorities cited therein would have supported the factual situation, which would have existed had the petitioner never been taken to the district court of Comanche county for trial until after he had served his sentence in the Tillman county case.

After the defendant had entered his plea of guilty in Comanche county, the state no longer had jurisdiction to again prosecute the defendant upon the crime to which he had pleaded guilty and received sentence.

In Heath v. State, 23 Okla. Cr. 382, 214 P. 1091, 1093, the Criminal Court of Appeals stated:

"Upon a plea of guilty, no trial upon the question of the defendant's guilt can be had. His plea stands in the place of the verdict of a jury finding him guilty, and for this reason we think that a withdrawn plea of guilty, for

which, by authority of law and of the court, a plea of not guilty is substituted would not be admissible in evidence against the defendant as a confession nor as an admission against interest."

After petitioner was incarcerated in the penitentiary, and no appeal had been taken by him from said conviction, this court has held that the court is without jurisdiction to set aside the first judgment and render a second judgment and sentence upon the same charge. See, Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 45 L. R. A., N. S., 60.

In that case it is stated:

"The defendant, upon his plea of guilty, was sentenced to pay a fine of $100—a punishment that is authorized by the statute for the offense charged. On the same day he paid the fine and satisfied the judgment. A month later he was brought into court, the original sentence was set aside, and he was sentenced to pay a fine of $100 and to be confined in the county jail for 15 days. Held, that the second judgment and sentence is, under such circumstances, null and void. * * *

"The leading case upon this question is Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872. In that case the defendant was convicted of appropriating mail bags, of the value of less than $25, the punishment for which offense, as provided by statute, was imprisonment for not more than one year or a fine of not less than $10 or more than $200. The sentence was one year's imprisonment and $200 fine. The defendant was committed in pursuance of the sentence and paid the fine the day after his commitment. On the second day after his commitment he was brought by habeas corpus before the same judge who sentenced him, who vacated the former judgment and sentenced the defendant anew to one year's imprisonment. The case came before the Supreme Court of the United States on habeas corpus, and the defendant was discharged, on the ground that, where a statute imposes as a punishment a fine or imprisonment, and the court has both fined and imprisoned the defendant, who thereupon pays the fine, the court has

no power, even during the same term, to modify the judgment by imposing imprisonment instead of the former sentence. One of the alternative requirements of the statute having been satisfied, the power of the court as to the offense was at an end. Mr. Justice Miller, delivering the opinion of the court, said:

" 'The judgment of the court to this effect being rendered and carried into execution before the expiration of the term, can the judge vacate that sentence and substitute fine or imprisonment and cause the latter sentence also to be executed? Or if the judgment of the court is that the convict be imprisoned for four months, and he enters immediately upon the period of punishment, can the court, after it has been fully completed, because it is still in session of the same term, vacate that judgment and render another, for three or six months' imprisonment, or for a fine? Not only the gross injustice of such a proceeding, but the inexpediency of placing such a power in the hands of any tribunal, is manifest.

" 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

" 'The principle finds expression in more than one form in the maxims of the common law. In civil cases the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause. "Nemo debet bis vexari pro una et eadem causa." It is upon the foundation of this maxim that the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him is a good bar to an action. In the criminal law the same principle, more directly applicable to the

case before us, is expressed in the Latin, "Nemo bis punitur pro eodem delicto," or, as Coke has it, "Nemo debet bis puniri pro uno delicto." "No one can be twice punished for the same crime or misdemeanor," is the translation of the maxim by Sergeant Hawkins. Blackstone, in his Commentaries, cites the same maxim as the reason why, if a person has been found guilty of manslaughter on an indictment, and has had benefit of clergy, and suffered the judgment of the law, he cannot afterwards be appealed. Of course, if there had been no punishment, the appeal would lie, and the party would be subject to the danger of another form of trial. But by reason of this universal principle that no person shall be twice punished for the same offense that ancient right of appeal was gone when the punishment had once been suffered. The protection against the action of the same court in inflicting punishment twice must surely be as necessary, and as clearly within the maxim, as protection from chances or danger of a second punishment on a second trial.

" 'The common law not only prohibited a second punishment for the same offense, but it went further and forbade a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted. Hence to every indictment or information charging a party with a known and defined crime or misdemeanor, whether at the common law or by statute, a plea of autrefois acquit or autrefois convict is a good defense. * * * If we reflect that at the time this maxim came into existence almost every offense was punished with death or other punishment touching the person, and that these pleas are now held valid in felonies, minor crimes, and misdemeanors alike, and on the difficulty of deciding when a statute under modern systems does or does not describe a felony when it defines and punishes an offense, we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases where a second punishment is attempted to be inflicted for the same offense by a judicial sentence.

" 'For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted? The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.

" 'But there is a class of cases in which a second trial is had without violating this principle, as when the jury fail to agree, and no verdict has been rendered, or the verdict set aside on motion of the accused, or on writ of error prosecuted by him, or the indictment was found to describe no offense known to the law. * * *

" 'We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone; that the principle we have discussed then interposed its shield and forbade that he should be punished again for that offense. The record of the court's proceedings at the moment the second sentence was rendered, showed that in that very case, and for that very offense, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offense, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offense was at an

end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist. * * *

" 'There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied. Without straining either the Constitution of the United States, or the well-settled principles of the common law, we have come to the conclusion that the sentence of the circuit court, under which the petitioner is held a prisoner, was pronounced without authority, and he should therefore be discharged.' "

In Yoder v. State, 66 Okla. Cr. 178, 90 P. 2d 669, this court held that where a court, following a mistrial, had dismissed the case and discharged the defendant on payment of costs, which costs the defendant had thereupon paid, such defendant could not be subsequently prosecuted for the crime.

In Ex parte Pruitt, 41 Okla. Cr. 318, 273 P. 288, 289, this court stated:

"The rule is well settled that, when a court has rendered judgment and imposed sentence upon a verdict of guilty or a plea of guilty, and such judgment and sentence has been carried into execution, the power of the court as to that offense is at an end, and the court is without jurisdiction to render a second judgment and sentence upon the same. Rupert v. State, 9 Okla. Cr. 226, 131 P. 713, 45 L. R. A. (N. S.) 60; [Ex parte] Myers, 12 Okla. Cr. 575, 160 P. 939. On these authorities the trial court was without jurisdiction to render the second judgment and sen-

tence, or to correct the original judgment after such judgment had been executed, as in this respect the power of the court must be exercised when the original judgment is rendered."

The courts are uniform in holding that where the defendant takes an appeal from a conviction and secures a new trial that he will not be entitled to a discharge under the statute because of the delay of the prosecution in trying him the second time, as the delay was caused by his efforts to reverse the conviction. See 16 C. J., p. 445.

The term "speedy," as employed in the constitutional provisions under consideration, being a word of indeterminate meaning, permits legislative definition to some extent; and the authorities generally hold that statutes providing for a discharge of accused unless trial is had within a stated time after indictment, information, or commitment, or which require an indictment or information within a stated time, are enacted for the purpose of enforcing the constitutional right, and that they constitute a legislative construction or definition of the constitutional provision, and must be construed fairly to the accomplishment of that end. 22 C. J. S., Criminal Law, § 467, p. 716.

See, also, Ex parte Leathers, 66 Okla. Cr. 172, 90 P. 2d 450; Ex parte Menner, 35 Okla. Cr. 252, 250 P. 541; Ex parte Munger, 29 Okla. Cr. 407, 234 P. 219.

The State of Oklahoma is committed to the rule that the burden is upon the defendant to show that the delay in affording the defendant a speedy trial was due to laches on the part of the state. See Stroud v. State, 57 Okla. Cr. 273, 47 P. 2d 883; Seitsinger v. State, 50 Okla. Cr. 299, 297 P. 312; Dalton v. State, 45 Okla. Cr. 86, 281 P. 985; Davis v. State, 44 Okla. Cr. 141, 279 P. 976; State v. Bayless, 38 Okla. Cr. 129, 259 P. 606; Griffith v. State, 36

Okla. Cr. 322, 254 P. 112; Francis v. State, 26 Okla. Cr. 82, 221 P. 785; Bailey v. Holden, 25 Okla. Cr. 206, 219 P. 961; Weeks v. State, 16 Okla. Cr. 443, 189 P. 932; Harris v. Ogden, 44 Okla. Cr. 418, 281 P. 316.

As there is no hard and fast rule for determining the question as to what is meant by the term "unless good cause to the contrary be shown," § 2872, supra, it becomes a matter for judicial determination under the facts and circumstances in each particular case.

When an accused has been sentenced upon a plea of guilty, and it is claimed that some of his constitutional rights have been denied, he may either appeal to this court from the judgment and sentence pronounced against him (Howington v. State, 30 Okla. Cr. 243, 235 P. 931), or he may institute an original proceeding for a writ of habeas corpus in this court and raise the same question of the denial of his constitutional rights. Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18. In either case, if the contention of the accused is sustained, the judgment and sentence is set aside and the case remanded for a new trial. Ex parte Meadows, supra.

In the latter part of the opinion in Ex parte Meadows, supra, the question of our authority to remand the petitioner for further proceedings in Comanche county was discussed at some length. The authorities therein cited and the reasoning set forth in that opinion are applicable herein, and we hereby refer to said opinion in support of the opinion in this cause. It was our intention by said opinion to grant the petitioner relief from a sentence where his constitutional rights had been denied, but only to the extent to meet the ends of justice by remanding the proceedings back to the proper court where he could be tried or enter his plea of guilty, whichever the petitioner and his counsel deemed the most advisable.

As was stated in Ex parte Alpine, supra:

"The writ of habeas corpus was not created for the purposes of defeating or embarrassing justice, but to promote it."

It is apparent that where a judgment and sentence pronounced against an accused has been set aside by the appellate court upon petition of the defendant because of the alleged deprivation of some of his constitutional rights in connection with the proceedings therein, the same rule should apply as applies to cases where the defendant takes an appeal and raises the same questions. The cases are analogous. The state certainly cannot be accused of laches for failure to prosecute the defendant further after he has entered his plea of guilty.

The right of an accused to a speedy trial may be waived, and is waived, by proceeding to trial without objection.

The petition filed herein does not raise the issue of former jeopardy; but upon the argument of this case, one of the attorneys for the petitioner made some reference to the fact that the defendant should not be tried again for the reason it would be placing him twice in jeopardy for the same offense. Neither the petitioner nor the respondent briefed this question; and it is apparent from what has been said herein that the petitioner would not be entitled to his discharge because of former jeopardy, since we hold that the action herein is analogous to the reversal and remanding of a case for a new trial after an appeal from a conviction has been had.

The rule as to jeopardy is well stated in 22 C. J. S., Criminal Law, § 271, p. 406, as follows:

"It is an established principle of law that an accused in a criminal case who procures a verdict and judgment

against him to be set aside or arrested by the court may be tried anew upon the same or another indictment for the same offense of which he was convicted. * * * "

The writ of habeas corpus is denied.

BAREFOOT, P. J., and DOYLE, J., concur.