DAVID PINES, Petitioner, v. DISTRICT COURT OF WOODBURY COUNTY et al., Respondents.

No. 46287.

JULY 27, 1943.

REHEARING DENIED OCTOBER 22, 1943.

Frank Margolin and Geo. G. Yeaman, both of Sioux City, for petitioner.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, Edward L. Moran, County Attorney, and Robert E. Beebe, of Sioux City, for respondents.

Bliss, J.—This appeal involves the interpretation and the application of the provisions of section 14024 of the Code of 1939, which are as follows:

"Delay in trial. If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

On May 7, 1942, during the May term of court, the grand jury of Woodbury county returned an indictment against the petitioner, charging him with the crime of larceny by artifice. At that time there was another indictment pending against him charging another offense, which had been returned on January 17, 1941. Mr. Margolin appeared of record as the attorney for the petitioner in the earlier indictment and had procured one or more continuances for him. On May 15, 1942, the petitioner appeared in person at the sheriff's office and gave the required bond for his appearance. In conformity to the usual practice in the Woodbury district court, no petit jury was called to try cases during the May 1942 term, which continued to September 13th. The September term began on September 14th, and closed on November 1, 1942. The petit jury for that term was discharged on October 14th. The November term began on the second day of that month and closed on January 10, 1943. The jury was discharged November 25, 1942. The January 1943 term opened on January 11th. On the 4th day of February 1943, in the January term, the petitioner, by his attorneys, one of whom was Mr. Margolin, filed a motion to dismiss the second indictment under the provisions of section 14024. Prior to the filing of this motion and during the January term, while the

jury was present, the county attorney informed the petitioner's attorney, in the presence of Judge Prichard, who had charge of the criminal division, that the state was ready to proceed with the trial of the second indictment. Mr. Margolin then told the court that he was going to file the motion to dismiss and that he was not asking that the jury be held. The motion is based only on section 14024, and no claim is made that the case had been continued for three terms of court. The state filed a resistance to the motion on February 11, 1943, on which day hearing was had, and a ruling followed on February 16th denying the motion. The court found, in substance, as follows.: The facts respecting the terms of court as above stated; that Mr. Margolin represented the defendant (petitioner herein) on the first indictment, but was not employed by him on the second indictment until the January 1943 term; that at each of the above-stated terms of court, in conformity to its rules, a day was set for the arraignment of all defendants against whom indictments had been returned, and who had been apprehended and not previously arraigned, and that said day for arraignment was publicly announced in open court each term; that soon after the return of the indictment herein the defendant was apprehended and posted his appearance bond on May 15, 1942; that he did not present himself for arraignment or plea at the arraignment day in the May 1942 term, nor at any subsequent arraignment date, and that he has not yet been arraigned or entered a plea to the indictment, nor moved against the form or substance of the indictment; the defendant at no time asked for a trial of his case, and at no time placed himself in position that a trial of his case was posssible; that the county attorney and Mr. Margolin, representing this defendant, had several conferences relative to the possibility of a plea by the defendant in the case pending under the first indictment, and during these conferences the second indictment was mentioned, although it was made clear that Mr. Margolin was not employed to represent defendant therein; the county attorney, because of said conversations regarding a possible plea, felt it inadvisable to press the second criminal case until such possibilities of a plea had come to a head; and the second cause was continued from term to term under a rule that all cases on the calendar not disposed of at the close of a term of court

should be continued to the next term and that good and sufficient causes for such continuances existed. It was the conclusion of the court that, arraignment having been provided for the defendant's convenience and information and his trial being impossible until after his arraignment or waiver thereof, and defendant failing to avail himself of arraignment, he was not in a position to complain of failure of trial during the term next succeeding the term at which the indictment was returned. The court, for the reasons mentioned, therefore denied the motion for dismissal.

The record sustains the findings of the court. At the hearing on the motion but one witness testified. He was Mr. Rawlings, the county attorney in 1942. Of a conversation with Mr. Margolin respecting this case he testified:

"I called Mr. Margolin's office and asked him in the September Term, and asked him if he was ready to go to trial on the Pines cases. He stated he was leaving the city on business and would not be back for a few days. I told him if he wanted a continuance he should have his girl prepare a motion for it and have it over to court while the jury were here. When Mr. Margolin returned to the city he came to my office and handed me a paper, and he said, 'This is a motion for continuance you asked for.' I said, 'Is this for both of them?' and he said, 'Yes.' I understand in that respect, so that there won't be any misunderstanding, that at the time Mr. Margolin was referring to men by the name of Wilson and Pines, and I was referring to the two cases against Pines and did not know that he had that in mind. In a subsequent conversation Mr. Margolin advised me that was what he meant when he referred 'in both matters' that he was referring to the two defendants and I was referring to one defendant in two cases. * * * Q. Your impression was that as far as case No. 22770, your impression was that a motion for a continuance was being filed in that case by Mr. Margolin? [No. 22770 was the second indictment.] A. That was my interpretation of it. Q. And relying upon that motion nothing further was done in the September term of court? A. Well, the jury had gone at that time. You see Mr. Margolin's return to the city was after the jury had left, then he came to the office

and we had that conversation. It was some time the latter part of September or in October. * * * These statements never got beyond a conversational stage, but because of the progress that was being made toward the entering of a plea by Pines in the first case * * * we never, after learning of the posting of the appearance bond by Pines, pressed for a forfeiture, or asked for forfeiture of that appearance bond at the time of any subsequent arraignments, assuming that it would simply embarrass proceedings that were taking place relative to the possibility of a plea, and assuming that Pines would appear to be arraigned at the proper time. * * * Q. And it was by virtue of these conversations, Mr. Rawlings, that you assumed that Mr. Margolin represented the defendant Pines in both indictments? A. What I now find to have been an erroneous assumption, at the time of that conversation I know he was not appearing for him, * * * it was just simply at that time in the confusion of these talks about these cases I overlooked the fact that he was not appearing in the second case. Q. But in the conversations relative to Pines as far as the disposal of the cases are concerned, didn't Mr. Margolin talk to you about both cases? A. Well, the conversation in that respect, yes, on a factual basis was as to both cases, and as to the second case it was involved because of the fact that the conversation took on this turn that the second indictment would undoubtedly be dismissed if the man was to plead on the first charge, or that in substance. Q. And that in substance was the conversation that more or less took place between you and Mr. Margolin? A. As I recall it, yes. * * * I might add, if I may, that we knew that we could not press the matter for trial until after the man had been arraigned, and he was not here for arraignment, and we didn't ask for forfeiture of the bond, because, as I previously stated, those facts that I have set forth.''

▮ I. One of the many complaints of the common people of early England, which finally resulted in the charters laying the foundations of their political and personal liberties, was that against the harshness of the criminal laws, both substantive and procedural. Bail was beyond the reach of many, and seldom permitted, with the result that the accused often languished in jails for long periods before being brought to trial. It was

because of this and other oppressions that the Bill of Rights became the first ten amendments to the Federal Constitution. The sixth amendment provides that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." Since the first ten amendments were intended to operate solely on the Federal Government, and the sixth amendment had no application to proceedings in state courts (Brown v. New Jersey, 175 U. S. 172, 174, 20 S. Ct. 77, 78, 44 L. Ed. 119; State v. Gaetano, 96 Conn. 306, 114 A. 82, 15 A. L. R. 468; State v. Swain, 147 Or. 207, 31 P. 2d 1745, 32 P. 2d 773, 93 A. L. R. 921), most of the states included a similar provision in their constitutions. See note to Nixon v. State, 2 Smed. & M. (Miss.) 497, in 41 Am. Dec. 601, 604. In the Constitution of Iowa this provision is in section 10 of Article I. The purpose of these provisions was to relieve the accused of the hardship of indefinite incarceration, or the anxiety of suspended prosecution if at liberty on bail, and to require the courts and peace officers to proceed in the trial of criminal charges with such reasonable promptness as proper administration of justice demands.

The term "speedy trial" used in the constitutional provisions is general and rather indeterminate, and not precise or definite as to beginning or limits. Nor is the Federal constitutional provision made more definite by any supplementary legislation. Consequently, the Federal courts have more latitude in determining its meaning in any case. The opportunity for such trial necessarily depends upon the circumstances in each case. A "speedy trial," as the term is used in the constitutional provisions, is defined in Nixon v. State, supra, 2 Smed. & M. (Miss.) 497, 507, 41 Am. Dec. 601, 602, as follows:

"By a speedy trial is then intended, a trial conducted according to fixed rules, regulations, and proceedings of law, free from vexatious, capricious, and oppressive delays, manufactured by the ministers of justice."

See Daniels v. United States, 9 Cir., Cal., 17 F. 2d 339, 344, certiorari denied 274 U. S. 744, 47 S. Ct. 591, 71 L. Ed. 1325; Black's Const. L., section 266.

Because of this indefiniteness in the meaning of the term, and a desire to bring it within more specific limitations, most of

the states have supplemented the constitutional provisions by statute. These statutory provisions embody the legislative conception and declaration of what the term "speedy trial," as used in the constitutions, means. Each is a statutory definition of the term "speedy trial" as conceived by the particular legislature enacting it, with the purpose in mind of more effectively enforcing the constitutional guaranty. · See State v. Arthur, 21 Iowa 322, 324; State v. Enke, 85 Iowa 35, 36, 51 N. W. 1146; Davison v. Garfield, 219 Iowa 1258, 1261, 257 N. W. 432, 433, 260 N. W. 667; State v. Smith, 106 Iowa 701, 710, 77 N. W. 499; People v. Foster, 261 Mich. 247, 246 N. W. 60, 61; Ex parte Meadows, 71 Okla. Crim. Rep. 353, 112 P. 2d 419, 427; Butts v. Commonwealth, 145 Va. 800, 133 S. E. 764; State v. Dinger, 51 N. D. 98, 199 N. W. 196; State v. Keefe, 17 Wyo. 227, 98 P. 122, 22 L. R. A., N. S., 896, 17 Ann. Cas. 161; State v. Slorah, 118 Maine 203, 106 A. 768, 4 A. L. R. 1256; Frankel v. Woodrough, 8 Cir., Neb., 7 F. 2d 796, 798; In re Trull, 133 Kan. 165, 298 P. 775; In re Schechtel, 103 Colo. 77, 82 P. 2d 762, 764, 118 A. L. R. 1032.

In many of the statutes the limitation is effected by specifying at which particular term, after the indictment was found, the trial must be had. Others state the number of days—sixty days in a number of the western states—after the finding of the indictment or the filing of the information. Many of the sections provide, as does section 14024 of the Iowa Code, that the indictment shall be dismissed "unless good cause to the contrary be shown."

The controlling fact, which is determinative of this appeal, is whether "good cause" was shown. It is our conclusion that it was.

It is a general rule and a sound one that if the accused is the cause of or a contributing factor in the delay which passes the trial over the second or subsequent terms, he should not be entitled to a dismissal. As found by the court, arraignment days were fixed for each term of court and publicly announced. The petitioner was already at large under the first indictment, on which continuances had been arranged. He had the advice of counsel. It is fair to assume he had been arraigned, and he was

no doubt familiar with the proceeding and its purpose. When apprehended on the second indictment he gave bond to the sheriff and was set at liberty. This bond is not set out in the record, but we may presume that it was in the form suggested in section 13616, Code of 1939, which provides:

"We [the defendant], and [the sureties], hereby undertake that the said [defendant] shall appear and answer the said indictment, and submit to the orders and judgment of said court, and not depart without leave of the same * * *."

How was he to answer the indictment? The statute provides but one way, and that is to appear and be arraigned and plead to the indictment. These are essential prerequisites to the trial of one formally charged with a crime, by indictment or information, unless the defendant waives them. A plea of not guilty is necessary to put a criminal cause at issue. It is ordinarily a prerequisite to the trial. The petitioner breached the provisions of the bond by not appearing and answering the indictment. For such failure the bond might have been forfeited and the petitioner apprehended on a bench warrant. If he could not be found the trial would probably be delayed. No one would contend that such delay would entitle him to a dismissal. His voluntary absence in breach of his contract ought not be made the basis for a dismissal. He never has been arraigned.

It also appears that at sometime during the September term the county attorney called Mr. Margolin's office, and, upon learning that he was out of the city, left word with his secretary to have a motion for continuance filed in the cause pending on the second indictment. In a few days Mr. Margolin brought over motions "in the two cases." The county attorney mistakenly thought they covered the two Pines cases, when, in fact, they covered the first Pines case and the case of another defendant. In State v. Johnson, 136 Iowa 601, 605, 111 N. W. 827, there was also a misunderstanding, which the court thought was sufficient cause for overruling the motion to dismiss.

The county attorney, at the conference spoken of and at other conferences with Mr. Margolin, discussed the two Pines cases. It was thought that a plea might be accepted in the first case which would dispose of both indictments. The county

attorney thought that continuances had been asked in each case. There was apparently no desire on the part of either attorney to press either case for trial if it could be otherwise disposed of. It is true that the court found that at the time of these conferences Mr. Margolin had not been "employed" in the second case. It may be true that he was not employed, but it is significant that Mr. Margolin was then the petitioner's attorney of record in the first case, and, whether employed or not, he was representing him with respect to the second indictment at these conferences; at least, the case was discussed, and at the January term Mr. Margolin appeared of record in the second case for the petitioner. See comment in Ex parte Van Garner, 134 Kan. 410, 5 P. 2d 821. As said in Hernandez v. State, 40 Ariz. 200, 205, 11 P. 2d 356, 357:

"The constitutional and statutory provisions involved herein were not meant to shield the guilty man who sits silently by and allows the officers of the state to assume that he acquiesces in delaying a trial, and then, when it is too late for the mistake to be remedied, claims his rights. They were meant rather to protect the man who seasonably makes it known to the proper officers that he claims an early trial, so that his innocence may be established."

The record in the case before us shows no objection on the part of the petitioner to any delay of the trial, but rather, acquiescence in delay and an attitude indicating he thought that he would probably be benefited, rather than hurt, by delay.

Another factor to be considered on the issue of "good cause" is the fact that the petitioner was always at liberty. The courts are not agreed as to the weight or importance which should be attached to the fact of whether the accused is incarcerated or at liberty. A number of courts, perhaps impressed with the thought that extended imprisonment was a primal consideration in the insistence for speedy trials, hold that one at liberty ordinarily may not have the indictment dismissed for delay. See People v. Foster, supra, 261 Mich. 247, 246 N. W. 60, 61; Meadowcroft v. People, 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447; Gallagher v. People, 88 Ill. 335. In some states, the statutes under discussion apply only when the accused

1294

is in custody. See State v. Slorah, supra, 118 Maine 203, 106 A. 768, 4 A. L. R. 1256; Ex parte Russo, 104 Colo. 91, 88 P. 2d 953; Palmer v. State, 198 Ind. 73, 152 N. E. 607.

In other states it is provided by statute, or held by the courts, that the statute applies whether the accused is confined or on bail. See Ford v. Superior Court, 17 Cal. App. 1, 118 P. 96; State v. Keefe, 17 Wyo. 227, 98 P. 122, 22 L. R. A., N. S., 896, 17 Ann. Cas. 161; State v. Arkle, 76 Mont. 81, 245 P. 526, 528; State v. Carrillo, 41 Ariz. 170, 16 P. 2d 965; In re Miller, 66 Colo. 261, 180 P. 749; In re Schechtel, 103 Colo. 77, 82 P. 2d 762, 764, 118 A. L. R. 1032. As stated in State v. Keefe, supra [17 Wyo. 227, 258, 98 P. 122, 131, 22 L. R. A., N. S., 896, 17 Ann. Cas. 161]:

"* * * the purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment of a criminal prosecution and the anxiety attending the same; and hence an accused admitted to bail is protected as well as one in prison."

We are disposed to agree with the view just expressed. Nevertheless, an accused at liberty escapes all of the inconveniences and hardships of one who is incarcerated, and the fact that an accused is at liberty is a matter for consideration and an important factor in the determination of good cause. It is of especial importance where, as in this case, the accused made no attempt whatsoever to bring his case to trial. This factor has been especially stressed, in several cases, when joined with the fact that no demand for trial was ever made by the accused.

In People v. Foster, supra, 261 Mich. 247, 252, 246 N. W. 60, 61, the court said:

"There are many constitutional rights which may be waived as well by failure to demand them as by affirmative action. In the absence of statute, the time limit of a speedy trial may depend upon a multitude of circumstances. One of the circumstances is that an accused is on bail or in jail. Where defendants are on bail and do not appear in court demanding trial, they have little reason to complain of delay. Meadowcroft v. People [supra], 163 Ill. 56, (45 N. E. 991, 35 A. L. R. 176, 54 Am. St.

Rep. 447). They are not under the oppression of the government which the provision was designed to prevent. In the absence of statute declaring a different policy, reason supports the conclusion that an accused on bail waives his constitutional right to a speedy trial by not demanding it.''

Other decisions which emphasize the fact that the accused was at liberty on bail and made no demand for trial are: State v. Lamphere, 20 S. D. 98, 104 N. W. 1038; State v. Dinger, supra, 51 N. D. 98, 199 N. W. 196; People v. Klinger, 319 Ill. 275, 149 N. E. 799, 801, 42 A. L. R. 581; Butts v. Commonwealth, supra, 145 Va. 800, 133 S. E. 764; Stroud v. State, 57 Okla. Crim. Rep. 273, 47 P. 2d 883; Francis v. State, 26 Okla. Crim. Rep. 82, 221 P. 785; Meadowcroft v. People, supra, 163 Ill. 56, 45 N. E. 991, 996, 35 A. L. R. 176, 54 Am. St. Rep. 447; Gallagher v. People, supra, 88 Ill. 335; Fox v. State, 102 Ark. 393, 144 S. W. 516; Worthington v. United States, 7 Cir., Ill., 1 F. 2d 154, certiorari denied 266 U. S. 626, 45 S. Ct. 125, 69 L. Ed. 675. In Martens v. Gaffney, 230 Iowa 712, 713, 717, 298 N. W. 801, we stress the fact that the accused was at all times at liberty on bail. This is true also in Paul v. District Court, 231 Iowa 1027, 1028, 1031, 2 N. W. 2d 751.

It is our conclusion that the respondent judge was right and that he did not abuse his judicial discretion in holding that there was good cause for denying petitioner's motion for the reason that he violated his bond in not appearing to answer the indictment by arraignment and plea and in refusing to place himself in position for trial and by his apparent acquiescence and consent to delay, and by the misunderstanding of the county attorney growing out of his conferences with Mr. Margolin, all taken in consideration of the fact that the accused was at liberty on bail.

But there is another factor which is conclusively decisive of the rightness of the decision. And that is the fact that, being at liberty, he made no effort of any kind to bring his cause on for trial, either by demand or by protest against the continuances over the September or January terms of court. If he had been desirous of having a jury determine his guilt or his innocence, or if the delay or suspense had been irksome or oppressive, it is a reasonable assumption that he would have taken some affirm-

ative action to bring about the speedy trial which he now claims was denied him.

The great weight of authority is that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial must be made by one charged with a crime, by indictment or information, to entitle him to a dismissal of the charge, under either the constitutional or statutory provisions involved herein. This is particularly true when the accused is on bail or not within the custody of the court. See 16 C. J. 443, section 800; 22 C. J. S. 719 et seq., section 469; annotation 129 A. L. R. 587 et seq.; 14 Am. Jur. 863, 864, section 138; note 56 L. R. A. 538; note 44 L. R. A., N. S., 871, and cases cited. The decisions supporting this general rule are based upon sound principles of law, logical reasons, and common sense. The object sought by the enforcement and extension of this rule is to preserve and protect every right of the accused, without sacrificing the rights of the public. As stated by our highest court, in Beavers v. Haubert, 198 U. S. 77, 87, 25 S. Ct. 573, 576, 49 L. Ed. 950:

"The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

In Frankel v. Woodrough, supra, 8 Cir., Neb., 7 F. 2d 796, 798, the court said:

"Speed in trying accused persons is not of itself a primal and separate consideration. Justice, both to the accused and to the public, is the prime consideration. Such speed is merely an important element or attribute of justice. If either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed. But when both parties have had fair opportunity for preparation, then either has a legal right to demand a trial as soon as the orderly conduct of the business of the court will permit it."

The reasons for the rule are well stated in State v. McTague, 173 Minn. 153, 154, 216 N. W. 787, 788, thus:

"The constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not

mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' * * * while the defendant and his counsel rest in silence. We hold that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. They are a shield, and as said in State v. Rowley, 198 Iowa 613, 615, 198 N. W. 37, 199 N. W. 369, they 'must not be left hanging on the wall of the armory.' There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal. The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this he must be held, in law, to have waived the privilege. Until he has so acted the state is not called upon to establish the existence of the statutory 'good cause.' ''

In State v. Dinger, supra, 51 N. D. 98, 101, 199 N. W. 196, 197, the North Dakota court said:

''The defendant was at all times out on bail and did not suggest or demand that he be tried at either term. * * * The underlying purpose of this constitutional provision is to provide protection to a person accused of crime *against arbitrary detention or imprisonment* upon a criminal charge without an opportunity to vindicate his innocence in a trial at law. While the purpose of the provision for a speedy trial is primarily to protect the rights of the accused, it should not be so construed as to defeat the due and orderly administration of justice and to enable the guilty to escape the just and lawful consequences of their crimes. It is intended to protect the right of the innocent, as well as of the guilty, to have the question of his guilt or innocence promptly

investigated, that is, the provision is intended to operate in the interest of justice. That conclusion necessarily requires that the courts recognize the interest of the public in law enforcement and in the punishment of persons who violate the penal laws." (Italics ours.)

While there was an earlier pronouncement to the contrary (In re Trull, supra, 133 Kan. 165, 298 P. 775), the Kansas court, in Ex parte Van Garner, supra, 134 Kan. 410, 412, 5 P. 2d 821, 822, said:

"But it does not follow that the petitioners are to go scot-free without answering to justice for their alleged crimes because the provision of the crime code intended to secure them a speedy trial was not complied with. Ever since their arrest these petitioners were represented by counsel. They did not ask for a speedy trial. They were quite content to let the term go by without calling the court's attention to their statutory right of trial at that term * * *."

We have found no federal decision holding contrary to the general rule herein stated. In Pietch v. United States, 10 Cir., Okla., 110 F. 2d 817, 819, 129 A. L. R. 563, certiorari denied, 310 U. S. 648, 60 S. Ct. 1100, 84 L. Ed. 1414, the court said:

"The United States Attorney stated in person and by letter to counsel for some of the accused that he did not intend to try the case, and that it was his purpose to dismiss it. But appellant never made demand for trial. He did not object or protest to the court respecting the delay. * * * A person charged with a crime cannot assert with success that his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States has been invaded unless he asked for a trial. In the absence of an affirmative request or demand for trial made to the court it must be presumed that appellant acquiesced in the delay and therefore cannot complain. Phillips v. United States, 8 Cir., 201 F. 259; Worthington v. United States, 7 Cir., 1 F. 2d 154, certiorari denied 266 U. S. 626, 45 S. Ct. 125, 69 L. Ed. 475; Frankel v. Woodrough, 8 Cir., 7 F. 2d 796; Daniels v. United States, 9 Cir., 17 F. 2d 339, certiorari denied, 274 U. S. 744, 47 S. Ct. 591, 71 L. Ed. 1325; Poffenbarger v. United States, 8 Cir.,

20 F. 2d 42, certiorari denied, Poffenbarger v. Aderhold, 290 U. S. 703, 54 S. Ct. 375, 78 L. Ed. 604; Collins v. United States, 8 Cir., 20 F. 2d 574; O'Brien v. United States, 7 Cir., 25 F. 2d 90; State v. Callahan, 119 Wash. 535, 206 P. 13; State v. Bohn, 67 Utah 362, 248 P. 119; State v. McTague, 173 Minn. 153, 216 N. W. 787; People v. Foster, 261 Mich. 247, 246 N. W. 60; Raine v. State, 143 Tenn. 168, 226 S. W. 189.''

Other decisions announcing the general rule herein stated are, Dillard v. State, 65 Ark. 404, 46 S. W. 533; Fox v. State, supra, 102 Ark. 393, 144 S. W. 516; State v. Banks, 111 La. 22, 35 So. 370; State v. Kopelow, 126 Maine 384, 138 A. 625; State v. Schnell, 107 Mont. 579, 88 P. 2d 19, 121 A. L. R. 1082; Ex parte Tramner, 35 Nev. 56, 126 P. 337, 41 L. R. A., N. S., 1095; People ex rel Ianik v. Daly, 30 N. Y. Crim. Rep. 47, 142 N. Y. Supp. 297; Beidleman v. State, 147 Okla. 136, 294 P. 1093; Harris v. Ogden, 44 Okla. Crim. Rep. 418, 281 P. 316; Commonwealth v. Faulk, Pa., 54 Montg. Cy. L. Rep. 410; State v. Lamphere, supra, 20 S. D. 98, 104 N. W. 1038; State v. Bohn, 67 Utah 362, 248 P. 119; State v. Austin, 121 Wash. 108, 207 P. 954; Weeks v. State, 16 Okla. Crim. Rep. 443, 183 P. 932; Commonwealth v. Grant, 121 Pa. Super. 399, 183 A. 663; People v. Klinger, supra, 319 Ill. 275, 149 N. E. 799; Hurt v. State, 62 Ga. App. 878, 10 S. E. 2d 136; Ex parte Meadows, supra, 71 Okla. Crim. Rep. 353, 112 P. 2d 419, 427; Ex parte Leathers, 66 Okla. Crim. Rep. 172, 90 P. 2d 450; Meadowcroft v. People, supra, 163 Ill. 56, 45 N. E. 991, 996, 35 A. L. R. 176, 54 Am. St. Rep. 447.

The decisions of this court were in full accord with the general rule for many years. In State v. Arthur, supra, 21 Iowa 322, 324, the court, in speaking of the defendant, said:

''* * * at no time resisting a continuance or demanding a trial, he is in no position to ask a discharge * * *.'' (Italics ours.)

In State v. Smith, supra, 106 Iowa 701, 710, 77 N. W. 499, in denying a motion to dismiss, we referred to the above-stated language in the Arthur case, and said:

''The statute quoted [section 4614, Code of 1873, now section 14024, Code, 1939] was evidently designed to enforce the constitutional provision giving to defendants in criminal prosecutions

the right to a speedy trial. It was not intended as a sword for offense, but as a shield for defense to those who are accused of crime.''

In State v. Rowley, 198 Iowa 613, 615, 198 N. W. 37, 38, 199 N. W. 369, error dismissed 269 U. S. 594, 46 S. Ct. 27, 70 L. Ed. 430, we said:

''This provision is for the benefit of an accused person *who claims its protection. It may be waived by him.* True, more than two terms of court intervened between the return of the indictment and the trial date, but we must presume that the defendant would have been granted an earlier trial if she had so requested. In fact, upon the first assignment of this cause for trial, she interposed her motion for a continuance, which was sustained. Thereafter, the cause remained on the docket without being assigned for trial until the term at which it was tried. *This was without protest on the part of the defendant.*'' (Italics ours.)

In State v. Ferro, 211 Iowa 910, 911, 912, 232 N. W. 127, 128, we said:

''It also appears that appellant made no request for a trial of her case at said term, and no objection to the continuance that resulted from the adjournment of the term.'' (Citing the Rowley case, supra, and State v. Ellington, 200 Iowa 636, 204 N. W. 307.)

In Davison v. Garfield, supra, 219 Iowa 1258, 1261, 257 N. W. 432, 433, 260 N. W. 667, the court said:

''The statute does not give a defendant the right to have such case dismissed because it is not called up for trial by the state. Neither is dismissal required in such situation by the constitution. The right to speedy trial is not denied. Trial may be had upon demand by the defendant, unless statutory grounds for continuance exist.''

In the second Davison v. Garfield case, 221 Iowa 424, 427, 265 N. W. 645, 647, this court departed from its previous holdings on this question, and the decisions of the courts generally, although attempting to distinguish our prior holdings. We there said:

"We cannot adopt respondent's contention that the motion to dismiss was properly overruled solely because defendants at no time demanded trial. The legislature did not see fit to impose any such duty on defendant when it enacted section 14024. While the fact that the defendant had not demanded trial has been mentioned in earlier opinions construing this section, in describing the situation that was before the trial court, it cannot be said that any of these opinions have injected into the statute a requirement or condition not therein contained. Nor do we find in any of the cases cited by respondent the unwarranted refusal to dismiss that is found in the case before us."

We are fully convinced that the decision of the trial court in the above-quoted case was right and should not have been reversed.

In Martens v. Gaffney, supra, 230 Iowa 712, 298 N. W. 801, and in Paul v. District Court, supra, 231 Iowa 1027, 2 N. W. 2d 751, we followed the holding in Davison v. Garfield, supra, 221 Iowa 424, 427, 265 N. W. 645, in holding that the failure to demand trial does not of itself constitute good cause for continuance. In each opinion, however, we qualified the holding in the second Davison case, by stating that the fact that no demand for trial was made was a matter for consideration in determining whether good cause was shown for not dismissing the indictment. It appears to the court that the position the court took in Davison v. Garfield, supra, 221 Iowa 424, 265 N. W. 645, is contrary to the previous decisions of this court and of the courts generally, and to sound criminal procedure as contemplated in the constitutional and statutory provisions in question. It is therefore overruled, and insofar as the decisions in Martens v. Gaffney and Paul v. District Court, supra, follow or give support to said holding in the second Davison case, they are also overruled.

It is our conclusion that the petitioner, not having resisted postponement, nor demanded a trial, nor made any effort to bring his case on for trial, waived any right to a dismissal under the provisions of section 14024. In so holding we are not reading anything into the section which was not fairly and reasonably within the intention of those who enacted it. Our decision herein is in accord with the uniform holding of the courts generally. In

no constitutional or statutory provision requiring speedy trial is there any condition that a failure to demand trial will defeat the accused's motion for a discharge, yet the courts, with but few exceptions, have construed the provisions as though they contained such a condition. The matter of good cause, as we have repeatedly held, is to be determined by the court in the exercise of judicial discretion. "Good cause," as stated in State v. McTague, supra, 173 Minn. 153, 154, 216 N. W. 787, 788, "means a substantial reason—one that affords a legal excuse." Whether substantial reasons exist is for the court to determine. As said in Ex parte Meadows, supra, 71 Okla. Crim. Rep. 353, 371, 112 P. 2d 419, 427:

"As there is no hard and fast rule for determining the question as to what is meant by the term 'unless good cause to the contrary be shown,' * * * it becomes a matter for judicial determination under the facts and circumstances * * *."

There are a few decisions which hold that an accused need not demand trial or initiate any move to bring his case on for trial. See State v. Rosenberg, 71 Or. 389, 142 P. 624; State v. Carrillo, supra, 41 Ariz. 170, 16 P. 2d 965, 966; In re Trull, supra, 133 Kan. 165, 169, 298 P. 775, 777; but also, see later Kansas case, Ex parte Van Garner, supra, 134 Kan. 410, 5 P. 2d 821. In the Trull case, it is said that to have a speedy trial "is a right, not a privilege, and cannot be frittered away by the laches of public officers." It is immaterial whether you call it a right or a privilege, it can be waived or frittered away by the accused. Constitutional rights, including those in the Bill of Rights, can be waived by a defendant. This court and other courts have so held. See State v. Rowley, supra, 198 Iowa 613, 198 N. W. 37, and State v. Sereg, 229 Iowa 1105, 1117, 296 N. W. 231; Busse v. Barr, 132 Iowa 463, 467, 109 N. W. 920, 921.

We find no error or abuse of discretion in the ruling of the respondent judge. The writ of certiorari is therefore annulled.—Writ annulled.

MULRONEY, C. J., and GARFIELD, MILLER, HALE, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.

OLIVER, J., concurs in the result.